Cynthia HILL, Appellant,

v.

**FORD MOTOR COMPANY, Ken Hune, And Paul Edds, Respondents.**

No. SC 88981.

Supreme Court of Missouri, En Banc.

Feb. 24, 2009.

LAURA DENVIR STITH, Judge.

Cynthia Hill appeals the grant of summary judgment to Ford Motor Company and Paul Edds[1] on her claim under the Missouri Human Rights Act (MHRA).[2] She alleges that while working at a Ford assembly plant, she was subjected to sexual harassment by a supervisory level employee, Ken Hune, which created a hostile work environment. She further alleges that she was suspended and directed to obtain psychiatric treatment in retaliation for rejecting Mr. Hune's sexual harassment and in return for previously having filed an unrelated discrimination claim.

---

1. The trial court's grant of summary judgment was only as to Ford and Mr. Edds.

2. The MHRA includes sections 213.010 to 213.137, RSMo 2000 and RSMo Supp.2008.

All further statutory references are to RSMo 2000, unless otherwise indicated.

This Court reverses the judgment and remands the case. Factual questions exist as to the cause of Ford's referral of Ms. Hill for psychiatric treatment and her suspension that preclude the grant of summary judgment on her hostile work environment claims of sexual harassment against Ford. Similarly, fact issues exist that preclude summary judgment on her claim that the suspension and referral for psychiatric treatment constituted retaliation by Ford against her for complaining about Mr. Hune's harassment and for filing her earlier claim with the Equal Employment Opportunity Commission ("EEOC"). Both the claim for a hostile work environment and the claim for retaliation are governed by the MHRA, not by federal law. See §§ 213.055 and 213.070; *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818 (Mo. banc 2007).

The Court reverses the grant of summary judgment to Mr. Edds as well. The MHRA permits suit to be brought against supervisory employees such as Mr. Edds, not just against the company itself, and the failure to make him a party at the administrative action before the EEOC or the Missouri Commission on Human Rights ("MCHR") will bar suit against him only if it resulted in prejudice. This Court therefore remands so that the trial court can consider whether such prejudice occurred.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Cynthia Hill worked as a production employee at Ford Motor Company's assembly plant in Hazelwood. In 2001, Ms. Hill filed a charge of discrimination with the EEOC and the MCHR. She received "right to sue" letters from both agencies in June 2002. Shortly thereafter, Ford removed Ms. Hill from her permanent position in Ford's trim department ("trim") and made her a "floater," meaning she moved from job to job, as assigned, within that department. She does not sue over the assignment as a floater.[3]

While working as a floater in trim, Ms. Hill worked with a variety of people, sometimes including a supervisor named Kenny Hune. Mr. Hune had become a supervisor in trim in April 2002. He frequently asked Ms. Hill for details about her pan ties and bra, such as whether she wore zebra prints, and if so, did that reflect her animal instincts, and made other sexual comments. He asked Ms. Hill how much she weighed and said he could bench press her. Ms. Hill let Mr. Hune know she was offended by and did not like the sexual comments he made. Mr. Hune told Ms. Hill and another female employee that he wanted one on top and one on bottom and once told Ms. Hill he could use an hour of "h—d." Ms. Hill rejected these sexual advances. In mid to late August, Mr. Hune asked Ms. Hill "what is it about me that you don't like?" Ms. Hill explained that she was not interested in him in any way except professionally.

Ms. Hill and other female Ford employees spoke to their group leader, Pete Wade, about the problem with Mr. Hune's inappropriate sexual comments. Within one or two months after Mr. Hune became a supervisor in trim, Mr. Wade spoke with Mr. Hune's own supervisor, superintendent Maurice Woods, and told him of Mr. Hune's inappropriate, sexually harassing behavior. Superintendent Woods said he would talk to Mr. Hune.

---

**3.** These facts are set out in the light most favorable to Ms. Hill, because the Court is required to review the facts to see whether fact issues exist that preclude the grant of summary judgment. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

In September 2002, Superintendent Woods told Ms. Hill to give him a list of available permanent jobs within her medical restrictions, as he did not like having unassigned "floater" employees; he also said he then would decide which job she would fill. Ms. Hill identified three open positions, only one of which, the "cladding" job, would require her to work continuously under Mr. Hune's direct supervision.[4] Superintendent Woods nonetheless assigned her to the cladding position. Mr. Hune told Superintendent Woods that he did not want Ms. Hill working for him and that she would work there over his dead body. Ms. Hill claims that the following day, September 5, 2002, when she showed up at Mr. Hune's office to start her job in cladding, Mr. Hune slammed the door in her face and told her he was not going to let her have the job.

While what happened next is disputed hotly by the parties, according to Ms. Hill, Mr. Hune became increasingly angry and came at her in an aggressive way. As she backed away, she says, she pushed her safety glasses up on her head. Mr. Hune then said, "Aha, you're not wearing your glasses. Go upstairs for not wearing your glasses"—a safety infraction. Mr. Hune then called security and announced he had a "hostile worker." Security arrived and led Ms. Hill upstairs to the labor relations department.

Once in labor relations, management employee Sheron Wright led a meeting with Ms. Hill and Mr. Hune and two union representatives to discuss what just had occurred. When Ms. Wright learned that Ms. Hill believed the incident arose out of Mr. Hune's sexual harassment of her, the meeting was paused until Paul Edds, labor relations supervisor, could join them. Ms. Wright later denied this was why the meeting was paused, but admits Mr. Edds did attend. Ms. Hill says that as she told her story about Mr. Hune's harassment of her, Mr. Edds interrupted and told her not to come back to work until she got psychiatric help. Mr. Edds then instructed the employee assistance program coordinator to take Ms. Hill to the plant physician and set up a consultation. The physician was not in, so no appointment was scheduled.

During the September 5, 2002, meeting, Ms. Hill at first thought Mr. Edds meant that he understood she might need counseling to help her deal with the harassment, but later she realized that was not the case. Therefore, she called Ford's 24-hour "Hotline," (established to receive reports of sexual harassment) on September 9, 2002, and reported that after she complained about being sexually harassed, she was told she was crazy, needed psychiatric help, and was sent home from work.

An hour after Ms. Hill called the hotline, Mr. Edds called Ms. Hill at home and rescinded his order that she see a psychiatrist. Mr. Edds then suspended Ms. Hill for three days for "disrespecting" her supervisor, including refusing to put on her safety glasses when instructed to do so. At the time of or after Ms. Hill's call to the hotline, another employee complained to Superintendent Wood about Mr. Hune's sexual harassment. Mr. Edds began an investigation of Mr. Hune and, eventually, fired Mr. Hune. In that investigation, Mr. Edds did not ask interviewees about Mr. Hune's conduct toward Ms. Hill, although he did ask about conduct toward the other employee who had complained about him. Mr. Edds never interviewed Ms. Hill while investigating Mr. Hune.

Ms. Hill did not return to work immediately at the conclusion of her three-day

---

4. Assembly production lines run throughout the plant. Various lines and sections of lines add different parts to each vehicle being assembled. Cladding is one of those sections.

suspension as her personal physician recommended that she take a medical leave from her job. Ms. Hill returned from her medical leave December 1, 2002; Mr. Hune already had been terminated when she returned.

In November 2002, Ms. Hill filed with the MCHR and EEOC her charges of discrimination against Ford, alleging unlawful discrimination in the form of sexual harassment resulting in a hostile work environment and retaliation in the form of suspension and mandatory referral for psychiatric help, based on her reporting of the above facts and on the fact that she previously had filed a claim with the EEOC and MCHR.

Ms. Hill did not name Mr. Edds as a party in the formal charge filed with the MHRC and the EEOC. No attempt at conciliation was undertaken at the administrative level by either the MHRC or the EEOC; both simply issued her a right to sue letter. She then filed suit against Ford, Mr. Hune, and Mr. Edds.

## II. STANDARD OF REVIEW

■ The propriety of a grant of summary judgment is purely an issue of law which this Court reviews *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* This Court reviews the record in the light most favorable to the party against whom judgment was entered. *Id.* Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* Summary judgment seldom should be used in

employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence. *Daugherty,* 231 S.W.3d at 818. Summary judgment should not be granted unless the evidence could not support any reasonable inference for the non-movant. *Id.*

## III. EMPLOYMENT DISCRIMINATION CLAIMS UNDER THE MHRA

### A. The Missouri Human Rights Act, Not Federal Case Law, Provides the Framework for Analyzing Discrimination and Retaliation Claims.

■ The parties disagree as to whether this Court should apply the MHRA as interpreted in *Daugherty,* 231 S.W.3d at 818–19, or federal case law under Title VII as interpreted in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in determining the propriety of the trial court's grant of summary judgment. While Missouri appellate courts are guided by both Missouri and federal law in deciding cases under the MHRA, the protections of the MHRA are not identical to those found in federal statutory schemes, such as Title VII, and, indeed, Missouri has adopted a different definition of "discrimination" that in some respects offers greater protection to workers than does federal law. See §§ 213.010.5 and 213.055.

Defendants recognize that the law governing trial of Ms. Hill's claim of sexual harassment is that set out in *Daugherty,* 231 S.W.3d at 818–20. *Daugherty* rejected defendant's argument in that case that the burden-shifting analysis that *McDonnell Douglas* requires be applied to Title VII cases to make out an indirect federal discrimination claim applies to claims of harassment under state law. Rather, *Daugherty* teaches, the right to sue under

Missouri law is quite naturally governed by the relevant Missouri statute, the MHRA.[5] That statute:

> defines "discrimination" to include *"any* unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." Section 213.010(5) (emphasis added). Nothing in this statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an employment decision; if consideration of age, disability, or other protected characteristics *contributed* to the unfair treatment, that is sufficient.

*Daugherty,* 231 S.W.3d at 819 (citation omitted).

Separate from her claim of a hostile work environment, Ms. Hill asserts that Ford retaliated against her for reporting Mr. Hune's harassment and because she previously had filed a claim with the EEOC and that this retaliation took the form of her referral for psychiatric treatment and her suspension. Ford argues that claims for retaliation are and should be treated, under Missouri law, differently from other claims of discrimination. More specifically, Ford argues that even though this Court rejected the argument in *Daugherty* that federal law as interpreted in *McDonnell Douglas* should govern Missouri courts' interpretation of a Missouri statute (the MHRA), this Court now should hold that federal rather than Missouri law governs claims of retaliation under section 213.070. *See, e.g., Brannum v. Missouri Dept. of Corrections,* 518 F.3d

542, 548 (8th Cir.2008) (applying federal law).

Defendant does not point to anything in the MHRA that would lead to this result, other than to note that retaliation claims are placed in a separate section from many other forms of discrimination barred under the MHRA. *Compare* § 213.070 and § 213.055. While factually correct, defendant does not explain why a claim for retaliation brought under section 213.070 should be treated differently from a claim for discrimination brought under section 213.055. In fact, section 213.070 describes retaliation as a form of discrimination, stating:

> ■ It shall be an unlawful discriminatory practice:
>
> . . . .
>
> (2) To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter;

§ 213.070.2. Retaliation for opposing discrimination or for filing a complaint constitutes discrimination under the MHRA and, like other forms of discrimination, is proved by showing the elements required by the MHRA, rather than by reference to cases such as *McDonnell Douglas* analyzing violations of federal law. To the extent Missouri cases decided prior to *Daugherty* suggest to the contrary, they are not to be followed.

### B. Hostile Work Environment Claim.

---

**5.** Under *McDonnell Douglas,* a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. 411 U.S. at 802, 93 S.Ct. 1817. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by offering evidence demonstrating that the employer's explanation is pretextual.

■ Ms. Hill's first claim is for sexual harassment resulting in a hostile work environment. It is governed by section 213.055, which, as relevant here, states in subsection 1.1 that it shall be an unlawful employment practice:

(1) for an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of any individual:

(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability.

*A claim of violation of this section is submitted to the jury as follows:*

Your verdict must be for plaintiff if you believe:

First, defendant *(here insert the alleged discriminatory act, such as "failed to hire," "discharged" or other act within the scope of Section 213.055, RSMo)* plaintiff, and

Second, *(here insert one or more of the protected classifications supported by the evidence such as race, color, religion, national origin, sex, ancestry, age, or disability)* was a contributing factor in such *(here, repeat alleged discriminatory act, such as "failure to hire," "discharge," etc.),* and

Third, as a direct result of such conduct, plaintiff sustained damage.

*[unless you believe plaintiff is not entitled to recover by reason of Instruction Number (here insert number of affirmative defense instruction)].

**6.** "If the alleged harassers are co-workers, the plaintiff must also show that the employer knew or should have known of the harass-

MAI 31.24 (6th Ed. Supp.2007). Ford reluctantly recognizes that, under *Daugherty,* the law as set out in section 213.055.1(1)(a), rather than as set out in *McDonnell Douglas,* governs Ms. Hill's hostile work environment claim.

■ Ms. Hill claims that Mr. Hune sexually harassed her to such a degree that it created a "hostile work environment." "Sexual harassment creates a hostile work environment when sexual conduct either creates an intimidating, hostile or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance." *Barekman v. City of Republic,* 232 S.W.3d 675, 679 (Mo.App. S.D.2007) (citation omitted).

■ To prevail on a hostile work environment sexual harassment claim, a plaintiff must prove: (1) she (or he if the claim is brought by a male) is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) her gender was a contributing factor in the harassment; and (4) a term, condition or privilege of her employment was affected by the harassment.[6]

A plaintiff can meet the requirement of proving that the harassment affected a term or condition of her employment by showing that the harassment contributed to cause a "tangible employment action." Missouri regulations define a "tangible employment action" as a "significant change in employment status" and as "the means by which the supervisor brings official power of the enterprise to bear on subordinates." 8 CSR 60–3.040(17)(D)(3). Such an action usually but not always involves direct economic harm. *Id.*

ment and failed to take prompt and effective remedial action." 37 MOPRAC § 5:11. *See Barekman,* 232 S.W.3d at 679.

Examples of tangible employment actions include but are not limited to: hiring and firing; promotion and failure to promote; demotion; undesirable reassignment; a decision causing a significant change in benefits; compensation decisions; and work assignments.[7]

8 CSR 60–3.040(17)(D)(4). "No affirmative defense is available ... when the supervisor's harassment culminates in a tangible employment action." *Id.* at 60–3.040(17)(D)(2).

If the harassment did *not* result in a tangible employment action, then:

an employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and b) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Id.* at 60–3.040(17)(D)(1).

Here, Ford alleges that it was entitled to summary judgment on Ms. Hill's hostile work environment claim because she failed to show that she suffered a tangible employment action in that her suspension did not result from Mr. Hune's sexual misconduct; rather she was suspended for disrespect toward her supervisor, including failing to keep on her safety glasses, and that the referral for psychiatric treatment was based on her conduct at the plant and was later withdrawn.

While a jury could believe Ford's evidence in this regard, on summary judg-ment a court is required to resolve all factual issues in favor of the non-moving party—here, Ms. Hill. She presented evidence that the suspension and the referral to a psychiatrist were in direct response to her refusal of Mr. Hune's advances and that the other explanations offered by Ford are pretextual.

Ms. Hill also presented evidence that she and others had complained to supervisors about Mr. Hune's conduct weeks before the September incident related to her reassignment to cladding and, in fact, that incident occurred because of anger at her complaints. Yet, she asserts, management did nothing to discipline Mr. Hune until she called the hotline and reported to Ford corporate headquarters, shortly after she complained about the harassment and Mr. Hune said he would not let her work for him. Further, she alleges that Ford did not even contact her when it was investigating Mr. Hune's conduct and that it fired him for other misconduct, not because of her complaints.

A reasonable fact-finder could accept Ms. Hill's evidence and conclude that her referral for psychiatric treatment and her suspension constituted tangible employment actions that were caused or contributed to by the sexual harassment. If the jury so finds, then Ford is not entitled to an affirmative defense that she did not timely complain or that it timely responded to her complaints.

Even were Ford's conduct insufficient to constitute tangible employment actions, however, Ford is not entitled to summary judgment based on its affirmative defense. As noted, to establish that defense it must

---

**7.** As amended in 2001, the MHRA "(a) expands the definition of 'supervisor' to include employees other than the plaintiff's immediate supervisor, even if that employee is outside of the plaintiff's direct chain of com-mand; and (b) expands the definition of 'tangible employment action' to potentially include changes in work assignments." 37 MOPRAC § 4.29. (emphasis added) (citations omitted).

show that it exercised reasonable care to prevent and correct the sexually harassing behavior and that Ms. Hill unreasonably failed to take advantage of preventive or corrective opportunities it offered. If Ms. Hill's evidence is believed by the jury, however, it could find that she and other female Ford employees spoke to their group leader, Pete Wade, about the problem with Mr. Hune's inappropriate sexual comments and that in May or June 2002, prior to her September 2002 suspension and referral for psychiatric treatment, Mr. Wade spoke with Mr. Hune's own supervisor, Superintendent Maurice Woods, and told him of Mr. Hune's inappropriate, sexually harassing behavior.

Superintendent Woods said he would talk to Mr. Hune. However, according to Ms. Hill, the conduct continued. Ms. Hill presented evidence that after Superintendent Woods learned about Mr. Hune's sexual harassment of Ms. Hill and other female employees, he nonetheless assigned Ms. Hill to the job in cladding, which Mr. Hune supervised. Further, she presented evidence that even after her hotline call to Ford, Ford's investigation of her claim was inadequate in that it failed to even interview her, and Ford apparently fired Mr. Hune for other misconduct uncovered in its investigation. This evidence, if believed, would be sufficient to defeat Ford's affirmative defense. For all of these reasons, it was error to grant summary judgment on Ms. Hill's claims of a hostile work environment.

### C. Retaliation Claim.

 Ms. Hill also alleges that her referral to a psychiatrist and her suspension were in retaliation for her complaints about Mr. Hune and for her 2001 filing of a different discrimination claim. Viewing the evidence in the light most favorable to the party against whom summary judgment was granted, Ms. Hill has adduced sufficient evidence that her rejection of and opposition to Mr. Hune's sexual harassment was a contributing factor in her referral for psychiatric treatment and suspension. The undisputed evidence further shows that Ms. Hill filed a charge of discrimination in 2001 and that the deadline for her right to sue on that charge was imminent around the time Mr. Edds required her to obtain psychiatric treatment and suspended her. Ms. Hill presented evidence that she rejected sexual advances by Mr. Hune numerous times in the summer of 2002.

Evidence presented by Ms. Hill showed that she was ordered to obtain psychiatric care on September 5, 2002, the very day she reported to Ms. Wright and Mr. Edds the sexually harassing behavior of Mr. Hune. Her evidence showed that Mr. Edds responded to her reporting of Mr. Hune's sexual harassment conduct by interrupting and cutting her off mid-complaint. Mr. Edds claimed that Ms. Hill did not complain of Mr. Hune's sexual harassment on September 5, 2002, and further claimed that he told her that she was suspended on September 5, 2002. Ms. Hill presented evidence, however, that Mr. Edds suspended her only after she complained to corporate on the employee Hotline about Mr. Edds' comment that she was crazy and his mandate that she obtain psychiatric treatment.

Ms. Hill also presented evidence that when she initially reported Mr. Hune's sexually harassing behavior to HR management employee Sheron Wright, Ms. Wright interrupted the meeting so that she could confer with Mr. Edds, but then later denied that Ms. Hill even had reported sexual harassment during that first meeting. A jury could find Ms. Wright's testimony was not credible because it is undisputed that she interrupted the meeting and got Mr. Edds to join them. A jury

also could believe that Mr. Edds' hasty act of ordering Ms. Hill to obtain psychiatric treatment before she could finish reporting the harassment demonstrated that Ms. Hill's complaint about Mr. Hune's sexual harassment already had been conveyed to Mr. Edds by Ms. Wright.

The record, which, again, must be viewed in the light most favorable to Ms. Hill, establishes two plausible accounts of the essential facts. The court, therefore, erred in granting summary judgment to Ford and Mr. Edds on Ms. Hill's retaliation claim.

### D. Summary Judgment in Favor of Mr. Edds Precluded

Mr. Edds argues that even if Ms. Hill is entitled to sue Ford, the MHRA does not permit her to assert additional claims against individual supervisors such as himself. However, the MHRA contains a broad definition of employer, stating that under MHRA:

(7) **"Employer"** includes ... any person employing six or more persons within the state, and any person directly acting in the interest of an employer ...

§ 213.010.7. As a number of decisions from Missouri's court of appeals have noted, "We find that the plain and unambiguous language within the definition of 'employer' under the MHRA imposes individual liability in the event of discriminatory conduct." *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 244 (Mo.App. E.D.2006); *Brady v. Curators of University of Missouri*, 213 S.W.3d 101, 113 (Mo.App. E.D. 2006). This Court agrees. The statute is clear that the MHRA is intended to reach not just the corporate or public employer but any person acting directly in the interest of the employer. A supervisory employee clearly falls into that category. *Id.*

Mr. Edds asserts that, in any event, Ms. Hill is precluded from suing him because she failed to name him in her EEOC or MHRA charge of discrimination, as she should have done under section 213.075.1. Because there are no relevant Missouri cases as to the effect of failure to name a person in a charge who is later included in the civil lawsuit, the Court looks to federal law for guidance. *Daugherty*, 231 S.W.3d at 818.

Federal cases construing a similar federal requirement have held that requiring an individual to be named in the charge in order to be included in the later civil suit serves two purposes: to give notice to the charged party and to provide an avenue for voluntary compliance without resort to litigation, such as through the EEOC's conciliation process. *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3rd Cir.1977); *Bowe v. Colgate–Palmolive Co.*, 416 F.2d 711, 719 (7th Cir.1969). If allowing suit would not be inconsistent with these purposes, then some federal cases have forgiven a failure to join the individual in the initial charge. *Id.*

*Glus* holds that these requirements are met where there is a substantial identity of interest between the parties sued and those charged and states that whether a sufficient identity of interest exists requires consideration of numerous factors, including:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether

the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Glus,* 562 F.2d at 888. While *Glus* recognized the importance of conciliation as a means of possibly resolving matters without resorting to an already overburdened federal court system, it found that:

> equally important is the availability of complete redress of legitimate grievances without undue encumbrance by procedural requirements *especially when demanding full and technical compliance would have no relation to the purposes for requiring those procedures in the first instance.*

*Id.* (emphasis added).

Ms. Hill argues that Mr. Edds was not prejudiced by being absent from the administrative proceedings. She contends he may have had actual notice that Ms. Hill was complaining that his conduct violated the MHRA because he was a senior supervisor in human resources and Ford's procedures for processing MHRA charges, ironically, dictated that those charges be directed to the position he occupied. She also argues that, because there was no conciliation by the EEOC or MCHR, he was not deprived of participation in conciliation and, hence, suffered no prejudice by the failure to name him as a party in the charge. It does not appear that the trial court considered any of these factors before granting summary judgment as to Mr. Edds. On remand, the trial court should consider whether the factors permitting suit to proceed against Mr. Edds, despite failure to join him during the administrative portion of the process, are satisfied.

## IV. CONCLUSION

The trial court erred in granting summary judgment on Ms. Hill's sexual harassment through a hostile work environment and retaliation claims. The trial court's judgment is reversed, and the cause is remanded.

PRICE, TEITELMAN, WOLFF and BRECKENRIDGE, JJ., and HARDWICK and McGRAW, Sp.JJ., concur.

RUSSELL and FISCHER, JJ., not participating.