**James O. HILFIKER, Appellant,**

v.

**GIDEON SCHOOL DISTRICT # 37, Respondent.**

**No. SD 31679.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 14, 2012.

Michael Anthony Moroni, for Appellant.

Margaret Ann Hesse, for Respondent.

James Hilfiker sued Gideon School District # 37 (District), alleging nepotism, age discrimination, and Teacher Tenure Act[1] violations. He lost on summary judgment which, for reasons stated herein, we affirm.

## Background

District sporadically employed Hilfiker to teach social studies, seven school years

---

1. *See* §§ 168.102 *et seq.* Statutory citations are to RSMo 2000 as amended through 2009.

in total, spread over four decades—1970–72, 1974–76, 1994–95, and 2007–09.

Throughout the 2007–08 term, which marked Hilfiker's return from a 12–year absence, the principal repeatedly met with him about performance concerns, including but not limited to technology use. Hilfiker, in his own words, "wasn't born in the computer generation" and was not "computer astute enough" to implement technology for his students as teachers were encouraged to do. He knew that District expected him to improve, but he did not think he needed to change.

The same concerns persisted into the 2008–09 school year. Administrators ultimately told Hilfiker that District valued the use of classroom technology, he had not met District's expectations in that regard, and they would recommend against renewing his employment. They did, and the school board voted not to renew Hilfiker's contract.

Hilfiker, age 60, was replaced by a 24–year–old who had been assistant volleyball coach for four years. Her father was a school board member. Hilfiker sued in four counts; District obtained summary judgment on them all.

Hilfiker abandons one count on appeal and raises seven points. The parties rightly agree that Points I–IV are well taken, but not dispositive, so we grant those without further discussion and limit our opinion to the last three points, each addressing one of Hilfiker's remaining claims.

### Teacher Tenure Act (TTA)

■ The TTA "distinguishes between permanent teachers who have achieved permanent status after five successive years of employment as a teacher in the same district, § 168.104(4), and probationary teachers who have been employed in the same school district five [successive] years or less. § 168.104(5)." *McCormack v. Maplewood–Richmond Heights Sch. Dist. Bd. of Educ.*, 935 S.W.2d 703, 710 (Mo.App.1996). Probationary teachers have no right to contract renewal; a school board may refuse to renew their contracts "for any reason or no reason, as long as the non-renewal is not based on some ground impermissible under the Constitution." *Smith v. King City Sch. Dist. R–1*, 990 S.W.2d 643, 646 (Mo.App.1998). By contrast, a permanent (tenured) teacher enjoys an "indefinite" contract terminable only for statutory cause and subject to statutory due process. *See* §§ 168.106, .114–.120.

■ Hilfiker claims permanent teacher status, theorizing that his years of sporadic teaching for District—two years on, two off, two on, 18 off, one on, 12 off, two on—were "successive" in that they followed each other in a series. We disagree.

In general parlance, "successive" means not just "following in order," but "consecutive"[2] or "following each other without interruption,"[3] neither of which fits Hilfiker's situation. Further, although the TTA does not define "successive," Hilfiker's view would render that term meaningless and superfluous in its statutory context. Year follows year naturally. Had our legislature viewed nonconsecutive years—and thus *all* years—as successive, then neither "successive" nor any other adjective was needed.

■ We also reject Hilfiker's alternative claim that District contractually granted him tenure. Prior to the 2008–09 term, District mailed a form letter to all teachers

---

**2.** Black's Law Dictionary 1473 (9th ed.2004).

**3.** Merriam–Webster's Collegiate Dictionary 1247 (11th ed.2005).

enclosing their new contracts and other information for the coming school year. Hilfiker's contract identified him as a probationary teacher. The accompanying form letter included a paragraph that read: "(For Tenured)—As a tenured teacher, you are under a continuing contract with the Gideon School District and your employment will continue for the 2008–2009 school year." Hilfiker's bald, unsupported, one-sentence argument that this "indicated that [he] had received tenure" is unpersuasive and inconsistent with the TTA as interpreted in *Sealey v. Bd. of Educ.*, 14 S.W.3d 597, 599 (Mo.App.1999), and *McCormack*, 935 S.W.2d at 711.

### Nepotism

▮ District could not hire a school board member's relative to replace Hilfiker if "the vote of the board member [was] necessary to the selection of the person." § 168.126.1. Because the undisputed facts show no such violation, we need not decide whether Hilfiker could enforce this statute by a private action for damages.[4]

Six of District's seven board members attended the meeting when Hilfiker's replacement was hired. Her father, the only related board member, abstained from the vote. Hilfiker admits this, but alleges "an inference that [the father] had an influence on the vote." This misses the mark; § 168.126.1 applies when a related board member's vote is necessary to the selection. Five unrelated board members made this decision. The father's vote was not necessary nor did he vote. Hilfiker's stated claim for nepotism fails as a matter of law.

4. The self-enforcing constitutional remedy for nepotism is forfeiture of office or employment by the public servant who made the inappropriate appointment. Mo. Const. art. VII, § 6; *State ex inf. Roberts v. Buckley*, 533 S.W.2d 551, 553 (Mo. banc 1976).

### Age Discrimination

Hilfiker argues that he "produced sufficient facts" to show that his age was a factor in District's decision and, thus, his age discrimination claim should survive summary judgment. *See Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 (Mo. banc 2007). Some legal background is in order.

Hilfiker's age discrimination claim has three elements: (1) his contract was not renewed; (2) his age was a contributing factor; and (3) he was damaged as a result. *Id.* Only the second element is at issue. Missouri has rejected federal burden-shifting rules for employment discrimination claims;[5] we use the same summary judgment framework as in other civil cases. *See Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664–65 (Mo. banc 2009); *Daugherty*, 231 S.W.3d at 818–20.

District cites extensive proof that its decision was justified, but that is not our focus on summary judgment, especially when age need be only a contributing factor. *Daugherty*, 231 S.W.3d at 819–20. Rather, we look for direct or indirect evidence that Hilfiker's age was a factor in District's action, giving Hilfiker the benefit of reasonable inferences and viewing the record favorably to him. *Id.* at 818 & n. 4; *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

Hilfiker contends that age discrimination can be reasonably inferred from three things:

5. Although it did not affect the outcome, we had indicated otherwise in *Grissom v. First Nat. Ins. Agency*, 364 S.W.3d 728, 739 (Mo. App.2012) and *Murray v. Southwest Missouri Drug Task Force*, 335 S.W.3d 566, 569 n. 7 (Mo.App.2011).

1. Hilfiker's opinion that District's "unreasonable emphasis placed on technology without training for older teachers discriminated against him because of his age."

2. Hilfiker's opinion that he "was doing a satisfactory job teaching his classes."

3. Hilfiker's claim of nepotism, including that his contract "was not renewed in order to hire a board member's daughter...."

■ The first of these involves inadmissible conclusions and opinions that, on this record, are wholly *ipse dixit.* Hilfiker did not request additional technology training, despite viewing himself as "not computer astute enough" in some respects. When asked at deposition why he was claiming age discrimination, Hilfiker replied, "I don't know if it was as much my age or the fact that I didn't have the computer skills that teachers 20, 25 years old just out of college that that's the world they grew up in."

In self-describing his technology challenges as "an age related issue," Hilfiker confesses the very type of prejudice that discrimination laws aim to remedy. Had his supervisors so spoken, Hilfiker might cite this as evidence of age discrimination, but he cannot bootstrap *his own* age and ability prejudices into a claim against District.

Hilfiker's second opinion fares no better in proving age-based animus. Since he saw himself a good teacher, he did not think he needed to make changes, even when he understood that District expected him to do so. He views his failure to meet performance expectations in six areas as being "[Principal] Buchanan's concerns only." Even if we assume that Hilfiker's own opinion of his work was admissible, it could raise a genuine dispute about his performance, but would not tend to prove that his age was a factor in District's decision.[6]

The same holds for Hilfiker's nepotism complaint. He cites no support, even by reasonable inference, for his surprising claim that he was first *hired* because of his

---

6. To his credit, Hilfiker does not claim that it was enough to offer evidence that he did satisfactory work, but was replaced by someone younger. This would be step 1 of the federal burden-shifting process, where it is often called a *prima facie* case, but is not *prima facie* in the normal sense because it does not satisfy "the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See, e.g., Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir.2007) (although plaintiff "was replaced by someone substantially younger than him, in this case 28 years younger, we have previously held that this fact, though necessary to establish a *prima facie* case, possesses insufficient probative value to persuade a reasonable jury that [plaintiff] was discriminated against." (internal quotation marks omitted)). In the federal regime, such proof merely raises a weak inference that disap-

pears as soon as the employer offers a nondiscriminatory reason for its action (step 2), after which the employee must offer further proof (step 3) to avoid summary judgment. *Carraher*, 503 F.3d at 717, 719.

We need not further consider the complexities of federal burden shifting. Suffice it to say that Hilfiker cannot avoid summary judgment merely by showing satisfactory work and a younger replacement because: (1) even under the federal framework, this will not defeat summary judgment, (2) Missouri eschews federal burden shifting, and (3) to hold otherwise would be inconsistent with Missouri's at-will doctrine.

Finally, given Hilfiker's age when hired (58), *any* replacement was likely to be younger. To infer intentional discrimination from this statistical truth is both logically dubious and unfair, discouraging employers from hiring someone of Hilfiker's age or putting them at risk if they do so.

age, then fired for the same reason, each time incident to a nepotism scheme.

*Hill* and *Daugherty* note that summary judgment is seldom appropriate in employment discrimination, but there was greater proof in those cases than here. *See Hill,* 277 S.W.3d at 664, 667–69 (suspension and psychiatric referral in retaliation for resisting supervisor's sexual advances); *Daugherty,* 231 S.W.3d at 818, 820 (tape-recorded statement that administrator wanted to get rid of older employees). Hilfiker needed more than his unsupported personal opinion that a District willing to hire him as a 58–year–old was age-prejudiced just two years later.

## Conclusion

Although seldom appropriate in employment discrimination cases, summary judgment is warranted here. We affirm the judgment.

JEFFREY W. BATES, J. and DON E. BURRELL, C.J., CONCUR.