

# SUPREME COURT OF MISSOURI
## en banc

EMANUEL MATTHEWS, ET AL.,      )
     )
       Appellants,      )
     )
v.      )
     )
HARLEY-DAVIDSON, ET AL.,      )
     )
       Respondents.      )

*Opinion issued January 30, 2024, and modified on the Court's own motion April 2, 2024*

No. SC100116

### APPEAL FROM THE CIRCUIT COURT OF PLATTE COUNTY
The Honorable W. Ann Hansbrough, Judge

The Appellants appeal the circuit court's judgment dismissing their claims against Harley-Davidson Motor Company Operations, Inc., ("Harley") and syncreon.US ("Syncreon") for creating a hostile work environment and aiding and abetting racial discrimination under the Missouri Human Rights Act ("MHRA"), chapter 213, RSMo.[1] Because Appellants' petition alleged facts that – if taken as true – establish the elements of a hostile work environment claim and aiding and abetting claims, the circuit court's judgment is vacated as to those claims, and the case is remanded.

---

[1] All statutory references are to RSMo Supp. 2017 unless otherwise noted.

**Factual and Procedural Background**

Until May 24, 2019, Harley operated a facility ("Plant") in Kansas City, Missouri, that manufactured and assembled Harley-Davidson equipment, parts, and merchandise. Harley contracted with another company, Syncreon, to provide some of the workers in the Plant. The majority of Harley's employees at the Plant were white, and approximately 90 percent of Syncreon's employees at the Plant were black.

On May 16, 2019, several employees, including each of Appellants, filed a charge of racial discrimination with the Missouri Commission on Human Rights. The commission issued all the employees a notice of right to sue. Eighteen employees filed a petition against Harley and Syncreon, primarily alleging multiple violations of the MHRA. Harley and Syncreon moved to dismiss Appellants' claims alleging a hostile work environment and aiding and abetting racial discrimination, arguing Appellants failed to allege facts sufficient to state each claim.[2] Harley and Syncreon argued Appellants, as opposed to the other seven employees named in the petition, failed to allege Appellants "personally experienced" any of the alleged harassing conduct or that Harley or Syncreon aided and abetted by providing "substantial assistance" or "encouragement" in the commission of acts prohibited under the MHRA. The circuit court sustained the motion and dismissed Appellants for failure to state claims. The circuit court did not dismiss the claims of the other seven employees who had filed suit. Appellants appeal the circuit court's dismissal of three counts: hostile work

_____

[2] Harley and Syncreon also moved to dismiss Appellants' claim for race discrimination, which the circuit court sustained. Appellants do not seek review of this claim. Harley and Syncreon did not seek to dismiss the other seven employees bringing discrimination claims against them.

environment against Harley and Syncreon, aiding and abetting racial discrimination against Harley, and aiding and abetting racial discrimination against Syncreon.

Appellants' petition alleged all Appellants are "Black (African American) or a Person of Color" and were jointly employed by Harley and Syncreon.[3] One Appellant was employed directly by Harley; all other Appellants were employed directly by Syncreon. The petition further alleged: "multiple incidents with racial overtones took place" at the Plant, including Syncreon hiring a white man to supervise Syncreon's predominantly black employees, even though Harley had previously terminated the same man for discriminating against Harley's black employees; frequent racially-motivated insults at the Plant; a "physical racial division" at the Plant, including a line that the predominantly-black Syncreon employees were prohibited from crossing, but that the majority-white Harley employees were permitted to cross; and bathrooms that were "functionally . . . racially segregated." Appellants claimed these "racially motivated acts and confrontations" created a "racially charged climate of fear, intimidation, and hostility for Black employees in the Plant that was a pattern and practice and constituted a continuing violation that subjected [Appellants] to discrimination, harassment and retaliation based on their race," and caused Appellants to feel "unsafe" working at the Plant.

Appellants also alleged in the petition that several specific racially charged incidents occurred from 2017 through 2019. In June or July of 2017, a noose was found in the

___

[3] In their petition, Appellants alleged Harley controlled the operations at the Plant, and Syncreon's involvement and employees were thoroughly entwined with and dependent on Harley's business operations. Appellants alleged Harley had a right to control Syncreon's actions and employment decisions at the Plant.

women's bathroom. In April 2018, a swastika and a doll of a black woman hanging by a noose were discovered in the women's bathroom. In November 2018, a black female Syncreon employee was assaulted by a male coworker; when she complained to Syncreon's human resources department, the representative discarded the employee's complaint into a trash can and told the assailant to forget about the incident and get back to work. In December 2018, a white female Syncreon employee showed coworkers – including at least one black Syncreon employee – a family photo bordered by Confederate flags; in the photo, some or all of the white family members were "depicting racist signs." When a black Syncreon employee complained to Syncreon, the employee was told not to worry about it and to get back to work. In January 2019, graffiti, including swastikas and the words "N****** die" and "N****** go back to Africa," was found in a bathroom used by Syncreon employees. In February 2019, racist graffiti again appeared in a Syncreon bathroom. When black employees took photographs of the graffiti, "Syncreon management or Harley management directed the Black employees to delete the photos." In February 2019, an employee also discovered a noose while working and reported the discovery to Syncreon. Later, a different black Syncreon employee overheard a Plant manager tell a Plant supervisor, "I want you to dispose of it." Yet another Syncreon employee witnessed the Plant supervisor cutting up the noose. An employee later asked a Syncreon manager what investigation of the noose had taken place and was told the noose had been "given to forensics." Appellants alleged Harley and Syncreon did not investigate or issue any discipline for any racially motivated incident that occurred at the Plant or otherwise attempt to prevent the occurrence of racially charged incidents at the Plant.

4

**Jurisdiction**

Before addressing the merits of an appeal, this Court must first determine whether it has jurisdiction. *Wilson v. City of St. Louis*, 600 S.W.3d 763, 765 (Mo. banc 2020). "For this Court to have jurisdiction, the judgment entered by the circuit court and appealed by the parties must have been a 'final judgment' as that phrase is used in section 512.020(5)." *Id.* To be "final," the judgment must either dispose of all claims (or the last claim) in a lawsuit, or be certified by the circuit court for immediate appeal pursuant to Rule 74.01(b). *Id.* at 768. A judgment is eligible for certification under Rule 74.01(b) as a "final judgment" only if it disposes of a "judicial unit" of claims, meaning the judgment resolves "all claims by or against at least one party" or "disposes of one or more claims that are sufficiently distinct from the claims that remain pending in the circuit court." *Id.* at 771. A circuit court has discretion over whether an eligible judgment should be certified under Rule 74.01(b). *Id.*

Here, the circuit court's judgment is a "final judgment" for purposes of section 512.020(5). While claims made by other employees remain against Harley and Syncreon in the case pending in the circuit court, the court's judgment resolved ***all*** of Appellants' claims. The circuit court properly found the dismissed claims constituted a "judicial unit" because the judgment disposed and resolved all claims made by Appellants and did not abuse its discretion certifying its judgment as final pursuant to Rule 74.01(b). Following an opinion by the court of appeals, Harley and Syncreon sought and were granted transfer to this Court pursuant to article V, section 10 of the Missouri Constitution. Therefore, this Court has jurisdiction to hear this appeal.

5

**Standard of Review**

This Court reviews a circuit court's grant of a motion to dismiss *de novo*. *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 424 (Mo. banc 2019).

> A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition. When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader.

*Mo. State Conf. of NAACP v. State*, 601 S.W.3d 241, 246 (Mo. banc 2020) (internal quotation omitted). "The Court does not weigh the factual allegations to determine whether they are credible or persuasive." *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012). "Instead, this Court reviews the petition to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Id.* (internal quotation omitted). Missouri is a fact-pleading state. *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 379-80 (Mo. banc 1993). The facts that must be pleaded are the ultimate facts, not evidentiary facts. *Scheibel v. Hillis*, 531 S.W.2d 285, 290 (Mo. banc 1976). Ultimate facts are those the jury must find to return a verdict for the plaintiff. *Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 463 (Mo. banc 2017).

**Analysis**

On appeal, Appellants allege the circuit court erred in dismissing: 1) Appellants' claim for hostile work environment because Appellants sufficiently pleaded the elements and 2) Appellants' claims for aiding and abetting because Appellants sufficiently stated a claim alleging Harley and Syncreon aided and abetted discriminatory conduct. This Court

6

agrees. Appellants sufficiently pleaded claims for hostile work environment and aiding and abetting.

## Hostile Work Environment

Appellants assert they stated a claim for hostile work environment under the MHRA. The MHRA prohibits an employer from discriminating against an individual with respect to "compensation, terms, conditions, or privileges of employment, because[4] of such individual's race . . . ." Section 213.055.1(1)(a). When reviewing cases under the MHRA, appellate courts "are guided by both Missouri law and any federal employment discrimination (i.e., Title VII [of the Civil Rights Act of 1964]) case law that is consistent with Missouri law." *Lampley v. Mo. Comm'n on Hum. Rts.*, 570 S.W.3d 16, 22 (Mo. banc 2019) (internal quotation omitted). Title VII's analogous provision to section 213.055 of the MHRA is found in 42 U.S.C. § 2000e-2.[5] This Court has recognized that generalized claims of discrimination based on a course of conduct, such as hostile work environment

---

[4] The General Assembly amended the MHRA effective August 28, 2017. The MHRA newly defined "because" to mean "as it relates to the adverse decision or action, the protected criterion was the motivating factor." § 213.010(2). "Motivating factor" is defined to mean "the employee's protected classification actually played a role in the adverse action or decision and had a determinative influence on the adverse action or decision." § 213.010(19). Before the 2017 amendment, this Court held a party seeking to make a claim of discrimination need plead and prove only that consideration of the party's protected characteristics "contributed to" the unfair treatment. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819 (Mo. banc 2007).

[5] 42 U.S.C. § 2000e-2(a) states:
> It shall be an unlawful employment practice for an employer--
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

claims, are governed by the MHRA if the hostility was directed at an individual because of his or her status in a protected class. *Gilliland v. Mo. Athletic Club,* 273 S.W.3d 516, 521 (Mo. banc 2009); *see also Hill v. Ford Motor Co.*, 277 S.W.3d 659, 666 (Mo. banc 2009). Likewise, the Supreme Court of the United States has recognized hostile work environment claims under Title VII. *See, e.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). The Supreme Court interpreted the phrase "terms, conditions, or privileges of employment" to "strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation omitted). Likewise, a discriminatory hostile or abusive environment affects the "terms, conditions, and privileges of employment" under Missouri law. *See* Section 213.055.1(1)(a).

The elements of a hostile work environment claim under the MHRA have been defined by Missouri courts:

> A successful claim of a hostile work environment requires the [claimant] to show: (1) he is a member of a group protected under the MHRA; (2) he was subjected to unwelcome harassment; (3) the [claimant]'s membership in the protected group was a motivating factor in the harassment; and (4) a term, condition, or privilege of the [claimant]'s employment was affected by the harassment.

*Eivins v. Mo. Dep't of Corr.*, 636 S.W.3d 155, 179 (Mo. App. 2021); *see also Hill*, 277 S.W.3d at 666.[6] Conduct "creates a hostile work environment when [discriminatory]

---

[6] Because *Hill* was decided prior to the MHRA amendment, the contributing factor test was used for the third element. Because Harley and Syncreon are not contesting that race was a motivating factor, the differing test does not affect the analysis. *Hill* also provides, "If

8

conduct **either** creates an intimidating, hostile or offensive work environment **or** has the purpose or effect of unreasonably interfering with an individual's work performance." *Hill*, 277 S.W.3d at 666 (emphasis added) (internal quotation omitted). "Further, in most claims of a hostile work environment, the discriminatory acts are 'not of a nature that can be identified individually as significant events; instead, the day-to-day harassment is primarily significant ... in its **cumulative** effect.'" *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 748 (Mo. App. 2020) (alteration in original) (quoting *Alhalabi v. Mo. Dep't. Nat. Res.*, 300 S.W.3d 518, 526 (Mo. App. 2009)).

Harley and Syncreon do not dispute that Appellants pleaded facts sufficient to satisfy the first and third elements necessary to support their harassment claims. Section 213.055 states that race is a protected class, and Appellants specifically alleged "[e]ach [Appellant] is Black (African American) or a Person of Color." Appellants sufficiently pleaded they were members of a group protected under the MHRA. Appellants pleaded that "[a]ll of the aforementioned racial, derogatory race-based comments, insults, and bullying by [Harley and Syncreon] were directed at [Appellants] because of their race," and Appellants' race was "a motivating factor" in Harley and Syncreon's efforts to create an intimidating, hostile, or offensive working environment for Appellants.[7] Appellants sufficiently pleaded that race was a motivating factor in the harassment.

---

the alleged harassers are co-workers, the plaintiff must also show that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action." 277 S.W.3d at 666 n.6

[7] The 2017 MHRA amendments apply to actions accruing on or after August 28, 2017. *See R.M.A.*, 568 S.W.3d 420 at 425 n.3. Of Appellants' allegations of specific racially charged

Harley and Syncreon contend, however, that the second and fourth elements are not sufficiently pleaded. The second element requires Appellants to plead they were subjected to unwelcome harassment. Appellants pleaded that Harley and Syncreon "subjected" Appellants to a "continuous pattern of hostile work environment based on race discrimination—including outrageous instances such as swastikas, nooses, a noose hanging a doll of a Black woman, and multiple graffiti using vile racial slurs against Black employees," all of which constituted "individually and collectively, racial harassment." Such allegations constitute unwelcome harassment. For their part, Harley and Syncreon argue none of the Appellants pleaded they personally witnessed or experienced any of the incidents about which they now complain. While the petition did not specifically allege Appellants witnessed or experienced the racially charged incidents, these incidents – such as nooses, graffitied swastikas, and racist threats written on bathroom walls – by their very nature, targeted and preyed on *all* black employees in the Plant. Because Appellants alleged they were "subjected to" this unwelcome harassment, the second element of a hostile work environment claim is sufficiently pleaded.

To satisfy the fourth element, Appellants must plead that a term, condition, or privilege of their employment was affected by the harassment. Discriminatory harassment affects a term, condition, or privilege of employment if it is "sufficiently severe or

---

incidents, only one incident – a noose being found in the women's bathroom in June or July 2017 – is alleged to have occurred *before* the MHRA amendments went into effect. Because Appellants claim that all incidents were "because of" Appellants' race, the allegations plainly satisfy both the "contributing factor" test in *Daugherty* and the "motivating factor" test in section 213.010.

10

pervasive [enough] to alter the conditions of the [claimant]'s employment and create an abusive working environment." *Meritor Sav. Bank, FSB*, 477 U.S. at 67 (internal quotation omitted); *see also McGaughy*, 604 S.W.3d at 748. The harassing conduct must be severe and pervasive enough to create a hostile or abusive working environment as viewed subjectively by the claimant and as viewed objectively by a reasonable person. *Harris*, 510 U.S. at 21. "A [claimant] can show that harassment affected a term, condition, or privilege of her employment by showing a tangible employment action, or an abusive working environment." *McGaughy*, 604 S.W.3d at 748 (citing *Hill*, 277 S.W.3d at 666); *see also Meritor Sav. Bank, FSB*, 477 U.S. at 64. "In assessing the hostility of an environment, [the Court] look[s] to the totality of the circumstances." *Eivins*, 636 S.W.3d at 179 (citing *Stacks v. Sw. Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1327 (8th Cir.1994)).

Appellants pleaded that the "ongoing series and cumulative effect" of the racial incidents they alleged "was so pervasive or severe as to create a hostile work environment for each [Appellant]," which directly caused Appellants damages and injury to their dignity and civil rights. Appellants additionally pleaded that the harassment unreasonably interfered with their work performance and adversely affected their physiological well-being. Appellants specifically pleaded that the harassing conduct was severe and pervasive as viewed subjectively by Appellants and as viewed objectively by a reasonable person:

> The harassment to which [Appellants] were subjected would affect the psychological well-being of a reasonable person and would unreasonably interfere with the work performance of a reasonable person. [Appellants] subjectively perceived [Harley and Syncreon]'s treatment to be inappropriate, hostile, and offensive; and a reasonable person in [Appellants'] circumstances would consider [Harley and Syncreon]'s treatment to be objectively inappropriate, hostile and offensive.

11

Appellants sufficiently pleaded they were subjected to discriminatory harassment severe or pervasive enough to create an abusive working environment. Appellants pleaded they subjectively viewed it as such, alleging the harassment affected their dignity, work performance, and physiological well-being. The display of nooses, graffitied swastikas, and racist threats constitute severe and pervasive harassing conduct as objectively viewed by a reasonable person. Accordingly, Appellants have pleaded all elements to state a claim for hostile work environment under the MHRA.

## Aiding and Abetting

Appellants additionally assert they stated claims for aiding and abetting under the MHRA against both Harley and Syncreon. It is an "unlawful discriminatory practice for an employer . . . [t]o aid, abet, incite, compel, or coerce the commission of acts prohibited under [the MHRA] or to attempt to do so[.]" Section 213.070.1(1). The MHRA does not define the terms "aid" and "abet." "In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary." *State v. Oliver*, 293 S.W.3d 437, 446 (Mo. banc 2009). "[W]ords having a peculiar and appropriate meaning in law shall be understood according to their technical import," and "may be derived from Black's Law Dictionary." *State v. Bales*, 630 S.W.3d 754, 761 n.5 (Mo. banc 2021) (internal quotation omitted). "Additionally, when the legislature utilizes an undefined statutory term with an established judicial or common law meaning, this Court presumes the legislature acted with knowledge of that meaning." *State v. Stewart*, 560 S.W.3d 531, 535 (Mo. banc. 2018). The phrase "aiding-and-abetting liability" is defined

as "[c]ivil or, more typically, criminal liability imposed on one who assists in or facilitates the commission of an act that results in harm or loss, or who otherwise promotes the act's accomplishment." *Aiding-and-abetting liability*, Black's Law Dictionary (11th ed. 2019).

This Court has not previously set forth the ultimate facts necessary to support an aiding and abetting claim under the MHRA but finds the *Restatement (Second) of Torts* to be persuasive. Section 876(b) of the Restatement states: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." "The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other." Restatement (Second) of Torts § 876 cmt. d (1979). To determine whether a defendant provided substantial encouragement or assistance, the Court considers "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other[,] and his state of mind . . . ." *Id.* Employment discrimination cases "are inherently fact-based and often depend on inferences rather than on direct evidence." *Lampley*, 570 S.W.3d at 22.

In their petition, Appellants alleged both Harley and Syncreon aided and abetted acts prohibited by the MHRA. As explained above, Appellants have pleaded sufficient allegations to establish a hostile work environment claim against both Harley and

Syncreon.[8]  The alleged actions of Harley and Syncreon individually, therefore, would constitute an MHRA violation.  Appellants, however, also pleaded sufficient facts that Harley's and Syncreon's acts aided and abetted others in creating and fostering a hostile work environment at the Plant.  Appellants specifically pleaded multiple instances in which Syncreon provided "substantial encouragement or assistance," including "urg[ing]" employees to "stay quiet about" incidents that allegedly created the hostile work environment at the Plant, "discard[ing] written employee complaints into a trash can," and misleading an employee as to the status of an investigation into a noose incident.  All these actions taken by Syncreon could be inferred to suggest that it not only allowed but also provided substantial encouragement and assistance in creating and fostering a hostile work environment at the Plant.

Appellants also pleaded facts that would support a reasonable inference that Harley provided substantial encouragement or assistance to create and foster a hostile work environment at its Plant.  Appellants alleged Syncreon's business operations at the Plant were thoroughly entwined with and dependent on Harley.  In fact, "Harley had a right to control Syncreon's actions" at the Plant.  In this role, Harley "physically divided the Plant" with a line that the predominantly black Syncreon employees were prohibited from crossing, but that the majority-white Harley employees were permitted to cross, and

_____

[8] Appellants argued on appeal that the circuit court erred in dismissing their claims for aiding and abetting *even if* Appellants failed to state an underlying MHRA violation. Appellants reasoned that the MHRA does not require a valid underlying discrimination claim because it is unlawful on its own "to attempt" to aid, abet, incite, compel, or coerce discrimination.  Because this Court finds Appellants sufficiently stated an underlying claim for hostile work environment, this Court will not address this point.

14

provided bathrooms that were "functionally . . . racially segregated." Appellants alleged Harley's "command over the employment structure, and the resulting deference shown to Harley management by Syncreon, reinforced the Plant's physical segregation and endorsed the ongoing structural conflict between Black and White employees." Appellants also pleaded multiple instances when Harley failed to prohibit Syncreon management or its own employees from engaging in acts creating the alleged hostile work environment. In doing so, Harley affirmed the ongoing racial conflict conducted by others in the Plant and substantially encouraged or assisted in the creation of a hostile work environment.

Finally, Appellants also alleged that, after racist graffiti appeared in a bathroom used by Syncreon employees, "Syncreon management **or** Harley management directed the Black employees to delete the photos" the employees had taken of the racist graffiti. (Emphasis added). When reviewing a motion to dismiss, appellate courts liberally construe the pleadings, "accept all alleged facts as true[,] and construe the facts in a light most favorable to the pleading party." *Atkinson v. Atkinson*, 185 S.W.3d 780, 781 (Mo. App. 2006); *see also* Rule 55.24. By pleading that either Syncreon *or* Harley management attempted to destroy evidence of racial harassment, Appellants pleaded that Syncreon, Harley, or both substantially encouraged or assisted the discriminatory conduct that created and fostered a hostile work environment. Similarly, Appellants pleaded that "a Plant manager" told "a Plant supervisor" to dispose of a noose, then an employee witnessed "the Plant supervisor" cutting up the noose. This pleading can be liberally construed as Appellants not knowing whether the manager and supervisors were employed by Syncreon or Harley. Again, such allegations amount to "substantial encouragement or assistance."

15

Appellants, therefore, have sufficiently pleaded claims against Harley and Syncreon for aiding and abetting under the MHRA.

## Conclusion

The circuit court erred in sustaining Harley and Syncreon's motion to dismiss Appellants' hostile work environment and aiding and abetting claims. All three claims avoid dismissal because they were sufficiently pleaded. The circuit court's judgment is vacated as to these three claims, and the cause is remanded for further proceedings.

_____
W. Brent Powell, Judge

Russell, C.J., Fischer, Ransom, Wilson
and Broniec, JJ., concur. Gooch, J., not participating.