

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STEVE SHIFFMAN, | ) | |
| | ) | |
| Appellant, | ) | WD86311 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| KANSAS CITY ROYALS BASEBALL CLUB, LLC., | ) | March 26, 2024 |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable James Dale Youngs, Judge**

**Before Division Two: Anthony Rex Gabbert, Presiding Judge,**
**Karen King Mitchell, Judge, and Janet Sutton, Judge**

Steve Shiffman (Shiffman) appeals the Jackson County Circuit Court's (trial court) entry of summary judgment in favor of Kansas City Royals Baseball Club, LLC (the Royals) on his petition claiming age and religious discrimination and retaliation under the Missouri Human Rights Act (MHRA), § 213.010, et seq.,[1] as well as hostile work environment. On appeal, Shiffman argues the trial court improperly (1) denied his motion to strike inadmissible "hearsay" affidavits, (2) granted summary judgment on his claim of religious discrimination, (3) granted

---

[1] Unless otherwise indicated, all statutory references are to the Revised Statutes of Missouri 2016, as amended, and all rule references are to the Missouri Supreme Court Rules 2023.

summary judgment on his claim of retaliation, and (4) granted summary judgment on his claim of hostile work environment. We affirm the trial court's judgment.

## Procedural and Factual Background

### *The Underlying Termination*

The following facts are taken from the Royals' statement of undisputed material facts and from Shiffman's additional statement of uncontroverted facts contained in his suggestions in opposition to summary judgment.

Shiffman worked for the Royals from October 2010 to March 2020, and, at the time of his termination, Shiffman was employed as the Senior Director of Ticket Sales and Services at Kauffman Stadium. In this role, Shiffman managed sales and service of season tickets, groups, premium tickets, suites, and individual game sales. Shiffman's direct supervisor was the Vice President of Marketing and Business Development.

Meanwhile, Shiffman's junior employee, the Director of Sales and Services, reported directly to Shiffman. Shiffman's junior employee directly supervised three managers who were responsible for ticket sales, season tickets, and group sales. The junior employee managed the sales process and staff while Shiffman oversaw the Ticket Sales and Services Department, including budgeting, goals, commissioning plans, and brokering relationships and season ticket plans.

By 2018, however, Shiffman and the junior employee's roles changed. The junior employee, instead, oversaw day-to-day employee management and became the primary contact in the Ticket Sales and Services Department. Shiffman remained engaged in the budget and managed relationships with ticket brokers. Further, Shiffman's supervisor decided he would take over Shiffman's broker deals because it would be easier and more efficient, and Shiffman would

continue to work on season ticket sales, suites, groups, and other areas.  By 2018, no component of Shiffman's compensation was tied to broker deals or ticket sales on the secondary market.

In November 2019, the Royals were sold to a group of investors.  The new owners brought in a new Senior Vice President and Chief Revenue and Innovation Officer (CRO) and a new Senior Vice President and Chief Operating Officer (COO).  The new CRO oversaw revenue, creative content, marketing, and community impact teams and the new COO oversaw business operations and administration.

In early 2020, the new leadership team, including the new CRO and COO, began meeting with departments to conduct an organization assessment.  The CRO and COO focused on the duplication of effort in the Ticket Sales and Services Department.

Through gathering information and meeting with employees, the CRO and COO believed that Shiffman had delegated most of his duties to his junior employee and that his junior employee had become the primary contact in the Ticket Sales and Services Department.  The CRO and COO further determined that Shiffman's supervisor was primarily managing the broker deals, and Shiffman's junior employee was performing most of the day-to-day responsibilities of the Ticket Sales and Service Department.

Therefore, in late February 2020, the CRO and COO determined that the Senior Director role was no longer needed and decided to eliminate Shiffman's position.  Shiffman was informed of the decision to eliminate his position on March 10, 2020, and the Royals did not hire anyone to replace him nor did they promote Shiffman's junior employee to Senior Director.

***Shiffman's Claims***

In July 2021, Shiffman filed his first amended petition for damages, alleging four claims. Shiffman alleged that while employed by the Royals, he experienced age and religious discrimination, retaliation, and a hostile work environment all in violation of the MHRA.

First, in his petition, Shiffman claimed age discrimination in violation of the MHRA. He alleged that on March 10, 2020, he attended a meeting in which he was informed his position was being eliminated. This termination meeting was held ten days before Shiffman's sixtieth birthday. Further, Shiffman alleged that since his termination, three other employees of the Royals were also "terminated and/or replaced by significantly younger employees." Shiffman said that he too was replaced by a "substantially younger employee" who was forty years old. Shiffman alleged that the "Royals ha[ve] a pattern or practice of discriminating against older employees as they have consistently terminated employees as soon as they approach the age of 60 while retaining younger employees with sub-par performance." Shiffman asserted the Royals would consistently fire older employees and keep younger employees and also restructure departments to "eliminate" positions held by older employees. Further, Shiffman pled that the Royals also favor "hiring younger employees over older applicants," and that Shiffman "has personally observed these discriminatory practices during the course of his employment." He also claimed the Royals interfered with his ability to do his job and refused to investigate his complaints of discrimination.

Second, Shiffman alleged religious discrimination in violation of the MHRA based on being treated differently because of his Jewish religion. Around February 2020, Shiffman attended a marketing meeting during which a coworker made a negative comment about Jews and "called [Shiffman] out" for being Jewish. Specifically, Shiffman alleged that this coworker,

4

the Vice President of Publicity, made negative statements about Jews in a room full of other employees and "everyone else in the meeting fell silent, and the environment in the room immediately became very uncomfortable."

Third, Shiffman alleged retaliation in violation of the MHRA in that he reported unfair and discriminatory treatment and subsequently suffered numerous negative employment actions, and was thereby retaliated against for his complaint. Further, Shiffman alleged that he "opposed the treatment he received as an older employee and as a Jewish employee" and complained during his termination meeting "that he was being discriminated against based on his age, his perceived national origin and his religion." He alleged that he reported his coworker's discriminatory comment to the Human Resources Director, but was terminated before he could make a formal written complaint. Shiffman also alleged that after his termination, the Royals retaliated against him by telling prospective employers that Shiffman failed to perform his job duties and responsibilities and that he had "multiple" prospective employers revoke their offers to interview him.

Finally, Shiffman alleged a hostile work environment in violation of the MHRA. Shiffman alleged that the Royals subjected Shiffman to "unwelcome harassment and discrimination in the form of unfair treatment, discipline and attacks on [his] character, ignored complaints, intentional discriminatory interference with his ability to do . . . his job duties/responsibilities, and retaliatory and unfair retaliation." Shiffman stated that the Royals' harassment was motivated by Shiffman's religion, age, and his complaints of unfair, discriminatory treatment; that the Royals knew or should have known about the harassment and discrimination; and that the discrimination and hostile work environment was continuous and ongoing.

5

The Royals filed their answer in January 2022, and a motion for summary judgment in September 2022, along with a memorandum in support and a statement of uncontroverted facts.

***Shiffman's Motion to Strike***

In October 2022, Shiffman filed a motion to strike portions of, and deny, the Royals' motion for summary judgment. In his motion to strike, Shiffman argued that the CRO and COO's affidavits (the Affidavits) should be struck along with any alleged fact statements citing those affidavits because the affidavits (1) were not based on personal knowledge, (2) were manufactured evidence, (3) were summaries prepared for litigation purposes, (4) were "replete" with inadmissible hearsay, and (5) made legal conclusions. Shiffman moved, *inter alia*, that those facts based on the Affidavits including "4, 16, 23-31, 52, 53, 62, and 63" as well as "24-31, 52, and 62-63" be struck. Shiffman also moved that facts "1-17, 23-26, 33-35, 38-43, 46, 47, 53-60, and 64" be struck as "immaterial" and that Exhibits A, C, E, G, and H be struck as "immaterial and irrelevant." Finally, Shiffman argued the entire motion for summary judgment should be struck because the Royals had "not met [their] burden to establish a prima face case in support of [their] motion for summary judgment." Shiffman also moved to reopen discovery in order to depose the CRO and COO.

In November, the Royals filed a memorandum in opposition to the motion to strike. The Royals argued Shiffman's motion to strike should be denied because the contested affidavits were based on personal knowledge and not hearsay, were proper support for a motion for summary judgment, and the affidavits did not contain legal conclusions; thus, there was no basis to strike the Royals' statement of facts. Further, the Royals requested the court order Shiffman to provide a substantive response on the merits to their motion for summary judgment.

In December 2022, the trial court denied Shiffman's motion to strike as well as his request to reopen discovery to depose the CRO and COO. The trial court also ordered that Shiffman file a substantive response on or before December 27, 2022.

***Shiffman's Response to the Royals' Summary Judgment Motion and Judgment***

On December 27, 2022, Shiffman filed his substantive response to the Royals' motion for summary judgment. Shiffman first included eight additional statements of uncontroverted facts, responded to the Royals' statement of uncontroverted facts, and argued that all four of his claims should survive summary judgment.

Shiffman submitted only two additional discovery documents, his performance reviews and the Royals' 2021 business plan, in an attempt to establish a genuine issue of material fact. Shiffman only referenced these performance reviews in his own statement of uncontroverted facts to support the fact that, "Each year between 2015 and 2020, [Shiffman] received positive performance review and exceeded goals and expectations."[2] Shiffman referenced the Royals' 2021 business plan twice—once in Shiffman's statement of facts and once in response to a Royals' fact statement. Shiffman provided no additional supporting discovery, exhibits, or affidavits supporting his responses not already used by the Royals to support their motion.

After a hearing in March 2023, the trial court granted the Royals' motion for summary judgment on all four of Shiffman's claims. The trial court ruled that Shiffman "failed to meet his burden under Rule 74.04 to show genuine issues of material fact that would support his claim that he was a victim of discrimination, retaliation, or harassment," entitling the Royals to judgment as a matter of law on all four claims.

---

[2] While Shiffman asserts that he received positive reviews for each year between 2015 and 2020, upon review of the exhibit that he attached to support this factual assertion, the last review is dated February 17, 2019.

Shiffman appeals.[3]  Additional facts necessary to the disposition of the case are included below as we address Shiffman's points on appeal.

## Legal Analysis

### Point I: Shiffman's Motion to Strike Affidavits

In his first point on appeal, Shiffman argues the trial court erred in denying his motion to strike the Affidavits attached to the Royals' motion for summary judgment as well as the Royals' facts relying on those Affidavits contained within the motion's statement of uncontroverted facts. Specifically, Shiffman argues the Affidavits are hearsay absent an exception, are not based on personal knowledge, and are self-serving declarations.  In sum, Shiffman argues the Affidavits were categorically inadmissible.  We disagree.

The trial court did not err in denying Shiffman's motion to strike because it properly considered the Affidavits under Rule 74.04 when reviewing the Royals' motion for summary judgment.

As stated in *Jungmeyer v. City of Eldon*:

> Rule 74.04 provides that a party moving for summary judgment "shall state with particularity in separately numbered paragraphs each material *fact* as to which movant claims there is no genuine issue, with *specific references* to the pleadings, discovery, exhibits or *affidavits* that demonstrate the lack of a genuine issue as to such *facts*."  Rule 74.04(c)(1) (emphasis added).  Rule 74.04 specifically requires that any such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and

---

[3]  On appeal, Shiffman does not raise any claim of error in the trial court's grant of summary judgment to the Royals on his age discrimination claim.  Shiffman abandoned this claim for appellate review, and we review Shiffman's three remaining claims of religious discrimination, retaliation, and hostile work environment.

"An appellant is deemed to abandon review of any claims that are not raised on appeal."  *Schultz v. Bank of Am. Merrill Lynch Credit Corp.*, 645 S.W.3d 689, 697 (Mo. App. E.D. 2022).  *See also Geiler v. Liberty Ins. Corp.*, 621 S.W.3d 536, 548 (Mo. App. W.D. 2021) (citation omitted) ("When an issue is presented and decided by the trial court, an appellant abandons any claim of error as to an issue not raised in its points relied on in its appellant's brief.").

shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 74.04(e).

472 S.W.3d 202, 205–06 (Mo. App. W.D. 2015). A party may file a motion to strike as a "response" to a motion for summary judgment as contemplated by Rule 74.04. *Id.* at 205 ("[A] motion to strike is a 'response' to a motion for summary judgment that is contemplated by Rule 74.04."). A party may "bring defects in the affidavits or other supporting materials to the trial court's attention by motion to strike or objection." *Cross v. Drury Inns, Inc.*, 32 S.W.3d 632, 636 (Mo. App. E.D. 2000); *Jungmeyer*, 472 S.W.3d at 205.

We review a trial court's ruling on a motion to strike for abuse of discretion. *Jungmeyer*, 472 S.W.3d at 206 (quoting *Lero v. State Farm Fire & Cas. Co.*, 359 S.W.3d 74, 79 (Mo. App. W.D. 2011)). We will reverse the trial court's ruling "only when it 'is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration.'" *Lero*, 359 S.W.3d at 79 (citation omitted).

Shiffman's argument on appeal demonstrates a fundamental misunderstanding of what constitutes hearsay in the summary judgment context and what suffices as a permissible affidavit under Rule 74.04.[4] By arguing the Affidavits are *per se* hearsay and should have been struck,

---

[4] Shiffman further demonstrates this misunderstanding by arguing the Affidavits were inadmissible because they were self-serving declarations. Shiffman cites *Brown v. Brown* for the principle that a self-serving declaration "is one made by a party in his own interest at some place and time out of court, and does not include testimony which he gives as a witness at the trial." 19 S.W.3d 717, 723 (Mo. App. W.D. 2000) (citation omitted). In *Brown*, however, the party testified on the stand regarding the conversations included in the exhibit at issue. *Id.*

The Royals argue that Shiffman is "attempting to put the cart before the horse" because "there is no basis for [Shiffman] to assert that the affiants would testify inconsistently with their [a]ffidavits." We agree. "While generalized self-serving allegations are not sufficient to defeat summary judgment, specific testimony based on the affiant's personal knowledge suffices." *Watterson v. Wilson*, 628 S.W.3d 822, 828 (Mo. App. W.D. 2021). Neither the CRO nor the COO have had the opportunity to testify, as did the parties in *Brown v. Brown*. Further, their statements were based on their personal knowledge, as discussed *infra*.

9

Shiffman ignores the difference between proof of factual assertions at the summary judgment stage and the admission of testimony to prove a factual assertion at trial.

Shiffman ignores the basic principle that affidavits, absent an exception, are generally inadmissible as evidence at trial as hearsay, yet nonetheless may suffice as proof supporting factual allegations in a motion. [5] *See Brown v. Chipotle Servs., LLC*, 645 S.W.3d 518, 524 (Mo. App. W.D. 2022) ("Affidavits are generally considered to be hearsay and are not admissible as evidence at trial, absent a stipulation of the parties."). "An affidavit is a written declaration on oath sworn to by a person before someone authorized to administer such oath." *Piva v. Piva*, 610 S.W.3d 395, 399 (Mo. App. E.D. 2020).

In fact, Rule 74.04 *requires* the movant to cite to specific references, including, but not limited to, affidavits, to demonstrate the lack of a genuine issue of material fact. Rule 74.04(c)(1). Rule 74.04 expressly directs the movant to attach "a copy of all discovery, exhibits or affidavits on which the motion relies" as support for a summary judgment motion. Rule 74.04(c)(1). Notably, "The facts contained in affidavits or otherwise in support of a party's motion *are accepted as true unless contradicted* by the non-moving party's response to the

---

[5] Rule 74.04 is not the only rule permitting reliance on affidavits to support a party's motion. For example, Rule 55.28 provides, in relevant part, "When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties . . . ." Further, "Rule 55.28 expressly authorizes the use of affidavits as proof supporting the factual allegations in a motion . . . ." *Brown v. Chipotle Servs., LLC*, 645 S.W.3d 518, 524 (Mo. App. W.D. 2022). Therefore, trial courts may properly consider affidavits when reviewing motions to dismiss for lack of subject-matter or personal jurisdiction or motions for sanctions. *See, e.g., State ex rel. DKM Enterprises, LLC v. Lett*, 675 S.W.3d 687, 693 (Mo. W.D. App. 2023) (stating, under Rule 55.28, a court may consider affidavits and depositions properly filed in support of the motion to dismiss' for lack of personal jurisdiction); *Graham v. Geisz*, 149 S.W.3d 459, 461 (Mo. App. E.D. 2004) (acknowledging that a court "may consider facts adduced by affidavits of the parties" attached to a motion to dismiss for lack of subject-matter jurisdiction as provided by Rule 55.28); *Hale v. Burlington N. & Santa Fe Ry. Co.*, 638 S.W.3d 49, 77 (Mo. App. S.D. 2021) (stating that, under Rule 55.28, "where a party does not verify its motion or support it with affidavits or testimony," the court does not err in denying a motion for sanctions).

summary judgment motion." *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020) (emphasis added) (citation omitted). Moreover, "Rule 74.04(e) requires that supporting and opposing affidavits be based on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show that the affiant is competent to testify to the matters stated therein." *Scott v. Ranch Roy-L, Inc.*, 182 S.W.3d 627, 634–35 (Mo. App. E.D. 2005); Rule 74.04(e).

Meanwhile, the Missouri Supreme Court defines hearsay as "an out-of-court statement offered to prove the truth of the matter asserted and depends on the statement's veracity for its value." *State v. Hollowell*, 643 S.W.3d 329, 337 (Mo. banc 2022). "Hearsay statements are inadmissible unless the statements fall under a recognized exception to the rule against hearsay." *Id.* *Van Deelen v. City of Kansas City*, *Missouri* articulates the distinction between using an affidavit as proof of a statement of uncontroverted material fact at the summary judgment stage versus admitting an affidavit as an exhibit at trial, stating:

> [An] affidavit itself is hearsay, i.e. an out-of-court statement offered for the truth of the matter asserted, and would not be admissible at trial unless otherwise agreed upon by the parties. However, similarly so, all of the affidavits and deposition testimony offered by the Defendants in support of their Motions for Summary Judgment is also hearsay and would not be admissible at trial to prove the facts contained therein. The summary judgment standard specifically permits the Court to consider this type of evidence in ruling on motions for summary judgment under the expectation that the content of the affidavits and deposition testimony reflects the evidence that will be presented at trial.

411 F. Supp. 2d 1105, 1120 (W.D. Mo. 2006), *aff'd*, 262 F. App'x 723 (8th Cir. 2007).

"Th[e] portions of the affidavits that are based on personal knowledge are admissible" as supporting discovery documentation under Rule 74.04. *Scott*, 182 S.W.3d at 635. Rule 74.04(e) requires that supporting and opposing affidavits for a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

"While an affidavit need not contain a particular 'magic phrase' in order to establish that it is made on personal knowledge, the averments should still demonstrate that the affiant has personal knowledge of the matters contained in the affidavit." *Bray v. Wells Fargo Home Mortg., Inc.*, 654 S.W.3d 732, 741 (Mo. App. E.D. 2022) (citation omitted). Further:

> Affidavits need not declare that statements are made from personal knowledge to be valid under Rule 74.04. However, when such a declaration is omitted, the statements within the affidavit must indicate a basis for personal knowledge. The basis for personal knowledge may also be gleaned from the role of the affiant as stated in the affidavit.

*May & May Trucking, L.L.C. v. Progressive Nw. Ins. Co.*, 429 S.W.3d 511, 515 (Mo. App. W.D. 2014) (internal citations omitted).

Both the CRO and COO stated in their affidavits that "[t]he facts stated in this Affidavit are based on my personal knowledge or on my review of documents kept in the normal course of the Royals' regularly conducted business activity."[6] Thus, the Affidavits are "based on personal

---

[6] In his brief, Shiffman argues the CRO and COO's statements of personal knowledge in their affidavits are inadequate under *Perry v. Kelsey-Hayes, Company*, 728 S.W.2d 278 (Mo. App. W.D. 1987).

In *Perry*, this Court ruled that the defendant's personal knowledge statement contained in his affidavit was insufficient to support a motion for summary judgment. *Id.* at 280. The contested affidavit included a statement of personal knowledge that read, "The facts herein stated are based upon my own personal knowledge, *or were obtained from records of the Kelsey-Hayes Company*, and are true and correct to the best of my knowledge, information and belief." *Id.* (emphasis added). We held that "[a]n affidavit which relates information gained from other documents relates hearsay, not such facts as would be admissible in evidence, and is not sufficient to support a motion for summary judgment." *Id.* (citation omitted). Because the defendant's affidavit "did not specify which statements of his affidavit were based on personal knowledge or which statements were taken from the business records," the affidavit had no "validity" and had to be severed from the summary judgment motion. *Id.*

Here, the CRO and COO's statements of personal knowledge read, "The facts stated in this Affidavit are based on my personal knowledge or *on my review of documents kept in the normal course of the Royals' regularly conducted business activity*." Unlike in *Perry*, the CRO and COO did not state that the facts in their affidavits were directly obtained from the Royals' business records. Here, the statements in the Affidavits were made on the CRO and COO's review of the Royals' business records. The affiants here stated *in their own words* their personal

12

knowledge, set forth facts that would be admissible in evidence, and affirmatively show that the affiant[s] [are] competent to testify to the matters stated therein." *Scott*, 182 S.W.3d at 634–35; Rule 74.04(e).

Additionally, an affiant's position within an organization may be sufficient to establish a basis for personal knowledge. *See Piva*, 610 S.W.3d at 400; *Wilson v. St. Louis Area Council, Boy Scouts of Am.*, 845 S.W.2d 568, 573 (Mo. App. E.D. 1992). In *Wilson*, our Court held that an "affiant's position within an organization established sufficient familiarity with the organization's structure, which was the subject matter the affidavit addressed, and that such familiarity established the basis for affiant's personal knowledge such that the affiant's statements were admissible." *Piva*, 610 S.W.3d at 400 (summarizing our Court's holding in *Wilson v. St. Louis Area Council, Boy Scouts of America*). *See Wilson*, 845 S.W.2d at 573 (stating that an affiant had sufficient personal knowledge of the facts in his affidavit because his role established his familiarity with the organization and its structure). Here, because the Affidavits were by the Senior Vice President and Chief Revenue and Innovation Officer (CRO) and the Senior Vice President and Chief Operating Officer (COO) of the Royals, both positions were sufficient to establish that each had personal knowledge of the facts attested to in the Affidavits.

Further, the Affidavits' subject matter directly addressed the Royals' organization's structure and the CRO and COO's familiarity with the organization. The CRO and COO's

---

understanding and knowledge gleaned from the Royals' business records. Thus, *Perry* is not dispositive.

Also, *Thomas v. Special Olympics*, 31 S.W. 3d 442, 449 (Mo. App. W.D. 2000) held that a trial court properly considered an affidavit when the affidavit stated it was "based upon his personal knowledge and based upon the records kept in the normal course of business."

13

statements come from their personal knowledge since their statements describe their individual department meetings, their assessment of effort duplication within the Ticket Sales and Service Department, and their determination that Shiffman's position as Senior Director was no longer needed. As such, not only did the Affidavits recite that they were based on personal knowledge, the Affidavits also demonstrated that they had personal knowledge of the matters contained within. *See, e.g., Bray*, 654 S.W.3d at 741.

In their briefs, both parties wrongly discuss the application of the business records exception as it applies to the Affidavits.

> Business records are admissible as an exception to the hearsay rule, provided the proponent lays a foundation through either testimony or affidavit, by a person who has sufficient knowledge of the business operation and methods of keeping records of the business, who testifies to the records' identity and mode of preparation and that the records were made in the regular course of business, at or near the time of the acts, conditions, or events.

*Gateway Metro Fed. Credit Union v. Jones*, 603 S.W.3d 315, 320 n.3 (Mo. App. E.D. 2020). Here, the Affidavits were not created with the purpose of verifying and admitting business records, as evidenced by the lack of testimony about the records' identity, mode of preparation, or other indicia verifying specific Royals' records.

The records referenced in the CRO's affidavit do not change our analysis because all records referenced in the affidavit—Exhibits A, C, E, G, and H—were already attached as exhibits supporting the Royals' statement of uncontroverted facts as permitted under Rule 74.04. *See* Rule 74.04(c)(1) ("Attached to the statement shall be a copy of all discovery, exhibits or affidavits on which the motion relies."). As the Eastern District of this Court held in *Wood v. Procter & Gamble Manufacturing Company*:

> Since [Respondent's] affidavit was based upon personal knowledge, sworn or certified copies of the records reviewed are unnecessary. In addition, the relevant business reports applicable to the portion of [Respondent's] affidavit in question can be found in the record. Copies of these records attached to the

14

affidavit would be mere redundancies.  The records do not substitute for the affidavit, and the error, if any, in admitting the affidavit without the attached sworn or certified copies of the records referred to is non-prejudicial.

787 S.W.2d 816, 821 (Mo. App. E.D. 1990).  Thus, the inclusion of these exhibits as records used in the preparation of the CRO's affidavit were "mere redundancies" and their inclusion was non-prejudicial.

In this case, the Affidavits are based on personal knowledge, set forth facts that would be admissible, and affirmatively show both affiants are competent to testify to the matters included therein.  *Scott*, 182 S.W.3d at 634–35.  Therefore, the trial court did not abuse its discretion in denying Shiffman's motion to strike.

Point I is denied.

### Points II, III, and IV: Summary Judgment on Shiffman's Religious Discrimination, Retaliation, and Hostile Work Environment Claims

We review the grant of a motion for summary judgment *de novo* and need not defer to the trial court's determinations.  *J.H. by and through Meudt-Antele v. Jefferson City Pub. Sch. Dist.*, 661 S.W.3d 353, 357 (Mo. App. W.D. 2023).  *See also Green*, 606 S.W.3d at 115.  "Summary judgment is only proper if the moving party establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."  *J.H.*, 661 S.W.3d at 357.  "The record is viewed in the light most favorable to the party against whom summary judgment was entered, and all reasonable inferences from the record are also viewed in favor of the party against whom judgment was entered."  *Id*.  A defending party is entitled to summary judgment if the party demonstrates one of the following:

(1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense.

15

*Show-Me Inst. v. Off. of Admin.*, 645 S.W.3d 602, 607 (Mo. App. W.D. 2022) (quoting *JTB Props., LLC v. Zwillenberg*, 626 S.W.3d 255, 262 (Mo. App. W.D. 2021)). "We will affirm the trial court's granting of summary judgment if it is correct as a matter of law on any grounds." *Show-Me Inst.*, 645 S.W.3d at 607 (quoting *JTB Props., LLC*, 626 S.W.3d at 261). "[O]nly those material facts set forth in the parties' statements of facts may be considered in determining whether summary judgment is appropriate." *Bracely-Mosley v. Hunter Eng'g Co.*, 662 S.W.3d 806, 810 (Mo. App. W.D. 2023) (citation omitted)

Rule 74.04 requires the movant to "state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue." Rule 74.04(c)(1).

> To accomplish this showing, the movant must attach to the motion for summary judgment a statement of uncontroverted material facts that "state[s] with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts."

*Green*, 606 S.W.3d at 116 (quoting Rule 74.04(c)(1)). Moreover:

> Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework. Courts determine and review summary judgment *based on that Rule 74.04(c) record, not* the whole trial court record. Affidavits, exhibits, discovery, etc. generally play only a secondary role, and then only as cited to support Rule 74.04(c) numbered paragraphs or responses, *since parties cannot cite or rely on facts outside the Rule 74.04(c) record.* [S]ummary judgment rarely if ever lies, or can withstand appeal, unless it flows as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone.*

*Id.* at 117–18 (quoting *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 161 (Mo. App. S.D. 2016)) (omitting numbers and bullet points appearing in *Green* and in *Jones*).

The non-movant must then file their response, setting forth "each statement of fact in its original paragraph number and immediately thereunder admit or deny each of movant's factual statements." Rule 74.04(c)(2). "[T]he non-movant is required to file a response either admitting

16

or denying the movant's material facts." *Green*, 606 S.W.3d at 117. Specifically, Rule 74.04

requires:

> The response shall set forth each statement of fact in its original paragraph number and immediately thereunder admit or deny each of movant's factual statements. A denial may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial. Attached to the response shall be a copy of all discovery, exhibits or affidavits on which the response relies. ***A response that does not comply with this Rule 74.04(c)(2) with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph.***

*Id.* at 117 (quoting Rule 74.04(c)(2)) (emphasis in original). *See also Eivins v. Missouri Dep't of*

*Corr.*, 636 S.W.3d 155, 175–76 (Mo. App. W.D. 2021). Further:

> The non-movant's response must either admit or deny, with specific references to discovery, exhibits, or affidavits demonstrating specific facts showing there is a genuine issue, each of the movant's statements of fact. If the non-movant does not properly deny a statement of fact, that fact is deemed admitted. If the non-movant files a statement of additional material facts, the process repeats itself, but with the non-movant stating material facts, supported in the same manner, to which the movant must respond.

*Bracely-Mosley*, 662 S.W.3d at 810 (internal citations omitted). *See also* Rule 74.04(c)(2)–(3).

Before addressing Shiffman's remaining points, which argue the trial court erred in

granting summary judgment, we first address the underlying summary judgment record, as this

record is integral to further analysis. The non-moving party must directly admit or deny the

movant's statements of uncontroverted fact; "this Court is not required to compare each

averment in [an appellant's] suggestions to each averment in [a respondent's] . . . motion for

summary judgment in order to ascertain which factual statements were admitted or denied."

*Exec. Bd. of Missouri Baptist Convention v. Windermere Baptist Conf. Ctr., Inc.*, 430 S.W.3d

274, 283 (Mo. App. S.D. 2014) (quoting *Wichita Falls Prod. Credit Ass'n v. Dismang*, 78

S.W.3d 812, 815 (Mo. App. S.D. 2002)). While we are not required to delve into the underlying

summary judgment record in such way, we find Shiffman's response to the Royals' statement of uncontroverted facts so unclear and inconsistent that we deem such analysis necessary before continuing to Shiffman's points on appeal. Having reviewed this underlying summary judgment record, as discussed *infra*, we find that Shiffman's substantive response to the Royals' motion for summary judgment failed to respond adequately under Rule 74.04 to the extent we may deem almost all facts admitted, as reiterated by the Missouri Supreme Court in *Green v. Fotoohighiam*.

In the Royals' suggestions in support of its motion for summary judgment, the Royals included sixty-eight numbered statements of undisputed material facts, citing to Exhibits A through M. These exhibits included Shiffman's employment offer letter, deposition, and separation package, as well as other relevant depositions, affidavits, and the Royals' equal opportunity employment policy and its employee relations policy.

Shiffman responded to the Royals' statement of undisputed material facts and included eight new statements of uncontroverted facts.[7] In his response to the Royals' statements of material fact, however, Shiffman wholly failed to "admit or deny" each of the Royals' factual statements as required by Rule 74.04(c)(2). Of those facts, Shiffman responded as follows:

- Shiffman stated three fact statements were "controverted."[8]
- Shiffman stated eighteen fact statements were "uncontroverted."
- Shiffman "objected" to *forty-seven* fact statements.[9]

---

[7] The Royals responded to Shiffman's additional eight statements of uncontroverted material fact included in his suggestions in opposition to summary judgment. Six such statements the Royals contended were "controverted," as demonstrated by the record, and two the Royals deemed "uncontroverted."

[8] Although Shiffman states these facts are "controverted," we find Shiffman failed to provide any record citations to discovery, exhibits, or affidavits in support of his assertions. Hence, Shiffman failed to demonstrate these three fact statements were indeed "controverted."

[9] As discussed *infra*, the trial court already ruled on Shiffman's motion to strike. Thus any objections Shiffman raised in his response to the Royals' statement of uncontroverted facts arguing the Affidavits were inadmissible had already been disposed of by the trial court. We

18

Of those forty-seven fact statements to which Shiffman "objected," Shiffman wrote at the end of nineteen of those objections that, "To the extent a response is required, this alleged fact is uncontroverted." Shiffman therefore admitted these additional nineteen fact statements.

Of the remaining twenty-eight fact statements to which Shiffman "objected," Shiffman responded as follows:

- Three times Shiffman "objected" and stated the fact statement was "controverted."[10]
- Six times Shiffman "objected" and failed to assert whether the fact statement was "controverted" or "uncontroverted."
- Nineteen times Shiffman "objected" and claimed the fact statement was both "uncontroverted" and "controverted."

None of these "objections" complied with Rule 74.04. "Where the response does not admit or deny each factual statement in the motion or contain adequate citations to the record to rebut the factual assertions in the motion, as required by Rule 74.04(c), we take the factual assertions contained in the motion as true." *Vogler v. Grier Grp. Mgmt. Co.*, 309 S.W.3d 328, 331 (Mo. App. E.D. 2010). "A response that does not comply with Rule 74.04(c)(2) with respect to any numbered paragraph in a statement of facts 'is an *admission* of the truth of that numbered paragraph.'" *Eivins*, 636 S.W.3d at 176 (quoting 74.04(c)(2)). *See also Bracely-Mosley*, 662 S.W.3d at 810 ("If the non-movant does not properly deny a statement of fact, that fact is deemed admitted.").

---

have no record of a trial court ruling addressing those remaining objections not based on the grounds of the Affidavits' admissibility.

[10] So too did Shiffman state these facts are "controverted." Again, we find Shiffman failed to provide any record citations to discovery, exhibits, or affidavits in support of his assertions. Hence, Shiffman failed to demonstrate these three fact statements were indeed "controverted."

Shiffman cannot "object" without asserting whether the fact statement was admitted or denied. By "objecting" in this manner, Shiffman did not admit or deny facts as mandated by Rule 74.04(c)(2), and those statements are deemed admitted. *See Green*, 606 S.W.3d at 117.

Any objections Shiffman stated were "uncontroverted" and "controverted" also failed to comply with Rule 74.04.[11] A non-movant's response must "support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). Here, Shiffman responded that several facts were either "uncontroverted," "controverted," or both, yet Shiffman did not contradict the Royals' fact statements with any specific references to the discovery, exhibits, or affidavits showing a genuine issue for trial. Several times, Shiffman even denied facts not included in the

---

[11] We note that four of these "objections" were only partial admissions under *Hootselle v. Missouri Department of Corrections*, 624 S.W.3d 123 (Mo. banc 2021).

In *Hootselle*, the Missouri Department of Corrections (MDOC) appealed a partial summary judgment awarded in favor of corrections officers. *Id.* at 130. At issue were several of the corrections officers' statements of material fact that referred to the corrections officers' prior deposition testimonies. *Id.* at 135. One such fact statement at issue read, "[Warden] *testified that* Class Plaintiffs are 'expected to handle incidents that rise to the level of needing intervention' while walking from the airlock to their posts." *Id.* (emphasis added).

The Missouri Supreme Court held that the MDOC's admission to this statement of material fact was not an admission to the statement's veracity. *Id.* Rather, the MDOC's admission to this fact was merely "an admission of the correctness of the statement of the witness's testimony." *Id.* Thus, "[a]lthough MDOC admitted the truth of [this statement], an admission of that paragraph admits only that [Warden] said what she said; it does not admit corrections officers are expected to handle incidents that rise to the level of needing intervention while walking from the airlock to their posts." *Id.*

Here, facts contained in paragraphs forty-one, forty-two, forty-three, and forty-seven all begin with either "[Shiffman's coworker] testified that . . . ." or "[Shiffman's supervisor] testified that . . . ." Shiffman correctly noted in his responses to these four statements of material fact that Shiffman could only admit such statements were "uncontroverted" as far as the deponent actually made that statement, not that the statement itself was true. Therefore, Shiffman admitted only that his coworker and his supervisor made these statements, but he did not admit to those statements' veracity.

Royals' fact statement. *See Exec. Bd. of Missouri Baptist Convention*, 430 S.W.3d at 283

(holding a plaintiff's responses erroneously stated "additional facts beyond those in the

paragraph, and denied facts not included in the paragraphs" and thus was noncompliant with

Rule 74.04).

Further, Shiffman only cited and submitted two discovery documents of his own in

support of his additional statements of material fact and in response to the Royals' fact

statements. *See* Rule 74.04(c)(2) ("Attached to the response shall be a copy of all discovery,

exhibits or affidavits on which the response relies."). We find neither exhibit refutes any of the

Royals' statements of undisputed material facts or affirmatively states a genuine issue of material

fact sufficient to defeat summary judgment.

Shiffman's responses contained only unverified or insufficiently verified "objections"

and were inadequate to rebut the evidence the Royals relied on in support of their motion for

summary judgment. *See Vogler*, 309 S.W.3d at 331. Shiffman's "objections" did not comply

with Rule 74.04(c)(2), and thus Shiffman admitted the truth of those numbered paragraphs. *See*

*Green*, 606 S.W.3d at 117 (quoting Rule 74.04(c)(2)). With Shiffman having admitted almost all

the Royals' statements of uncontroverted material facts, we continue assessing points II, III, and

IV on appeal.

***Point II: Shiffman's Religious Discrimination Claim***

In his second point on appeal, Shiffman argues the trial court erred in granting the

Royals' motion for summary judgment on his religious discrimination claim because:

> [T]he trial court A) improperly shifted the burden to plaintiff to prove his case at
> the summary judgment stage instead of requiring defendant to make a prima facie
> case in support of its motion for summary judgment; and B) incorrectly held that
> plaintiff would not be able to produce evidence sufficient to allow the jury to find
> that the termination of plaintiff's employment was motivated by plaintiff's

21

religion in that the trial court relied on inadmissible affidavits, set forth the facts most favorable to defendant, and ignored facts and inferences in favor of plaintiff.

We disagree.

Before addressing the merits of Shiffman's second point, we briefly discuss Shiffman's briefing noncompliance with Rule 84.04. Rule 84.04(d) requires appellants use separate points relied on to challenge separate rulings or actions. *See Lexow v. Boeing Co.*, 643 S.W.3d 501, 505–06 (Mo. banc 2022). "Consolidating 'multiple, independent claims' into a point is not permitted," and "a single point relied on may not be multifarious." *Id.* at 506 (citation omitted). "Separate issues should be stated in separate points relied on." *Hale v. Burlington N. & Santa Fe Ry. Co.*, 638 S.W.3d 49, 61 (Mo. App. S.D. 2021) (citation omitted). "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." *Lexow*, 643 S.W.3d at 506 (citation omitted).

Shiffman's second point relied on improperly challenges multiple issues with the trial court's ruling and is therefore noncompliant with Rule 84.04(d). We exercise our discretion and overlook this briefing deficiency in Shiffman's point relied on because this deficiency does not impede our review on the merits. *See Lexow*, 643 S.W.3d at 508 (stating we have "discretion to review noncompliant points gratuitously, overlooking the technical deficiencies in the points relied on, when the deficiencies do not impede review on the merits."); *Hale*, 638 S.W.3d at 61 ("This Court, in its discretion, may review all, some, or none of a multifarious point relied on.").

We now turn to the merits of Shiffman's second point on appeal, addressing first whether the trial court improperly reviewed the facts most favorable to the Royals thereby ignoring facts and inferences favorable to Shiffman and, second, whether the trial court improperly shifted the burden to Shiffman to prove his case. We review the grant of a motion for summary judgment *de novo* and need not defer to the trial court's determinations. *J.H. by and through Meudt-Antele*,

22

661 S.W.3d at 357. Moreover, the trial court was, in fact, mindful of drawing factual inferences and explicitly stated in its judgment:

> The Court evaluates the pending motion mindful of the need to exercise caution in granting summary judgment in employment discrimination cases since such cases are "inherently fact-based and often depend on inferences rather than on direct evidence." *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664 (Mo. banc 2009). To that end, the Court has reviewed the record and all reasonable inferences from it in a light most favorable to Plaintiff. *M.W. v. Six Flags St. Louis*, 605 [S].W.3d 400, 409 (Mo. App. E.D. 2020).

We address now whether the trial court improperly shifted the burden to Shiffman to prove his case.

Section 213.055.1(1)(a) prohibits discrimination based on religion. Section 213.055 states:

> 1. It shall be an unlawful employment practice:
> (1) For an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of any individual:
> > (a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability; . . . .

§ 213.055.1(1)(a).

To establish a prima facie case for religious discrimination under the MHRA, an employee must show: (1) that he suffered an adverse employment action; (2) that his religion was the motivating factor; and (3) that he suffered damage as a result. *See Eivins*, 636 S.W.3d at 166 (applying this test for an age discrimination claim in an employment context where there is direct evidence of discrimination). *See also Shirrell v. Saint Francis Med. Ctr.*, 24 F. Supp. 3d 851, 864 (E.D. Mo. 2014), *aff'd sub nom. Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881 (8th Cir. 2015). "Section 213.010(19) defines 'the motivating factor' as: 'the employee's protected

23

classification actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action.'" *Eivins*, 636 S.W.3d at 166.

In his suggestions in opposition to the Royals' motion for summary judgment, Shiffman did not present any direct evidence of discrimination to support his claim and conceded that he relied solely on circumstantial evidence to prove his claim. Without any direct evidence of religious discrimination, we are required to apply the *McDonnell Douglas* burden-shifting analysis, which the trial court did correctly. *Shirrell*, 24 F. Supp. 3d at 859 ("Plaintiff has not presented any direct evidence of religious discrimination. Therefore, this Court will analyze plaintiff's claim under the *McDonnell Douglas* burden-shifting framework.").

"Like federal courts, Missouri courts use the burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973) to evaluate proof in discrimination cases where disparate treatment is alleged." *Eivins*, 636 S.W.3d at 166 (citation omitted); § 213.101.3,4.[12] As directed by the Missouri legislature, we apply the *McDonnell Douglas* burden-shifting framework in cases involving indirect evidence of discrimination, as here. *Eivins*, 636 S.W.3d at 166 (citing § 213.101.3) ("The Missouri

---

[12] Section 213.101.3 states:

> 3. If an employer in a case brought under this chapter files a motion pursuant to rule 74.04 of the Missouri rules of civil procedure, the court shall consider the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny to be highly persuasive for analysis in cases not involving direct evidence of discrimination.

Section 213.101.4 states:

> 4. The general assembly hereby expressly abrogates by this statute the cases of *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814 (Mo. 2007) and its progeny as they relate to the contributing factor standard and abandonment of the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

legislature has declared that this format is to be considered highly persuasive for summary judgment analysis in cases not involving direct evidence of discrimination.").

Under the *McDonnell Douglas* framework,[13] a plaintiff establishes a prima facie case of religious discrimination by showing that: (1) he is a member of a protected class because of his religious affiliation or beliefs; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Shirrell*, 24 F. Supp. 3d at 859. *See Eivins*, 636 S.W.3d at 167; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Further:

> If established, "the burden of production then shifts to the employer, who must rebut the presumption of discrimination with evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." If a legitimate, nondiscriminatory reason is established by the employer, the "burden then reverts to the plaintiff to point to evidence which, if believed, would expose the employer's reason as a mere pretext for intentional discrimination."

*Eivins*, 636 S.W.3d at 167 (internal citations omitted). *See McDonnell Douglas*, 411 U.S. at 802.

As established by the summary judgment record, Shiffman's claim meets elements one, two, and three. First, the summary judgment record shows that Shiffman is an openly and actively practicing member of the Jewish religion, a protected class. Second, the record also shows that overall, Shiffman received positive performance reviews. Third, Shiffman suffered

---

[13] The *McDonnell Douglas* burden-shifting framework first requires the plaintiff to establish a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Should the complainant meet this test, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.*

We use this framework in analyzing MHRA discrimination cases under section 213.055, such as this, in keeping with § 213.101.3, 4. *See also Eivins v. Missouri Dep't of Corr.*, 636 S.W.3d 155, 165–66 (Mo. App. W.D. 2021).

an adverse employment action when his position with the Royals was terminated on March 10, 2020.

The summary judgment record, however, does not reflect that the circumstances give rise to an inference of discrimination. Shiffman alleged that on or around March 3, 2020, he attended one of the Royals' marketing meetings in which a coworker made a negative comment to Shiffman and others about Shiffman's religion. Specifically, Shiffman alleged that his coworker said "Shifty, aren't you a Jew?" and, "I have a problem with those people." Shiffman alleged that his coworker said, "I'm just having a problem," referencing an issue with obtaining the Jewish Community Center's consent to use their logo on the Royals' website.

Neither in his response to the Royals' statement of uncontroverted facts or in his own additional statement of uncontroverted facts, has Shiffman identified any similarly situated employees of the Royals outside of his protected class who were treated more favorably than him. Shiffman has not provided any evidence that the Royals treated him differently than non-Jewish employees. Additionally, Shiffman can only point to one comment made by a coworker—not his supervisor—about Jewish people that offended him during his approximately ten years of employment with the Royals. Further, there is no evidence of any bias by the CRO or COO, who made the decision to eliminate Shiffman's position. Based on their affidavits, both the CRO and COO were unaware of Shiffman's religion. The summary judgment record shows no evidence that either the CRO, the COO, or Shiffman's supervisor ever made any discriminatory comments about the Jewish religion during Shiffman's employment with the Royals.

We find no support for Shiffman's allegation in his suggestions in opposition of summary judgment that the Royals have a "discriminatory culture" that led to his employment termination.

26

As found in *Shirrell v. Saint Francis Medical Center*, a "single, isolated, offensive comment is insufficient to support an inference of religious discrimination." *Shirrell*, 24 F. Supp. 3d at 860. Therefore, Shiffman cannot establish a prima facie case of religious discrimination.

Even if this Court assumed that Shiffman could establish a prima facie case for religious discrimination, the Royals demonstrated a legitimate, nondiscriminatory reason for terminating Shiffman's position. The summary judgment record does not establish that the alleged discriminatory exchange between Shiffman and his coworker had any bearing on the Royals' decision to terminate Shiffman's position.

As demonstrated by the Royals' statement of uncontroverted facts and as deemed admitted by Shiffman, the CRO and COO decided to eliminate Shiffman's position after assessing the Ticket Sales and Service Department and asking questions about the duplication of effort within the department. Based on the information they gathered in assessing the department, the CRO and COO determined that, over time, Shiffman had delegated most of the department duties to his junior employee and that same junior employee, rather than Shiffman, was the department's primary contact for most people. Because Shiffman's supervisor was already primarily managing broker deals and Shiffman's junior employee was performing most of the day-to-day responsibilities, the CRO and COO decided to eliminate Shiffman's position. The CRO and COO determined that the Senior Director position, Shiffman's position, was no longer needed in late February 2020. Neither the CRO or COO were aware Shiffman was Jewish. Most importantly, Shiffman alleged that the marketing meeting with his coworker occurred in March 2020—*after* the CRO and COO already made the decision to eliminate his position in February.

With the burden reverting to Shiffman, Shiffman has failed to point to any evidence which, if believed, would expose the Royals' reasons as a mere pretext for intentional discrimination. Therefore, the trial court correctly ruled that Shiffman failed to make a prima facie case and granted the Royals' motion for summary judgment on Shiffman's claim of religious discrimination.

Point II is denied.

***Point III: Shiffman's Retaliation Claim***

In his third point on appeal, Shiffman argues the trial court erred in granting the Royals' motion for summary judgment on his retaliation claim. Shiffman argues that the Royals "did not meet [their] prima facie burden of showing [their] right to judgment as a matter of law in that the trial court considered defendant's inadmissible hearsay, failed to consider plaintiff's evidence of retaliation, and improperly gave defendant the benefit of inferences from the evidence."[14] We disagree.

As discussed in our analysis of Point I, we need not address whether the trial court considered "inadmissible hearsay" because, as discussed *supra*, the Affidavits were admissible under Rule 74.04. Also, as with Point II, we apply a *de novo* standard of review and do not defer to the trial court's determinations. *See J.H. by and through Meudt-Antele*, 661 S.W.3d at 357. We also apply the *McDonnell Douglas* burden shifting framework. We now look to whether the trial court properly concluded that Shiffman failed to establish a prima facie case of retaliation.

---

[14] We also note that Point III is also impermissibly multifarious under Rule 84.04, but, because we can readily discern Shiffman's point on appeal, we review the merits of his point. *See Lexow v. Boeing Co.*, 643 S.W.3d 501, 508 (Mo. banc 2022) (extending our discretion "to review noncompliant points gratuitously, overlooking the technical deficiencies in the points relied on, when the deficiencies do not impede review on the merits.").

Under section 213.070.1(2) of the MHRA, it is an unlawful discriminatory practice for an employer:

> (2) To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter . . . .

*See also Eivins*, 636 S.W.3d at 180; *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 47–48 (Mo. App. W.D. 2016). To make a submissible case for retaliation under section 213.070, a plaintiff must establish that: (1) he complained of discrimination; (2) the defendant took adverse action against him; and (3) a causal relationship existed between the complaint and the adverse action. *Eivins*, 636 S.W.3d at 180; *Soto*, 502 S.W.3d at 48; *McCrainey*, 337 S.W.3d at 753.

"With regard to the adverse action requirement, 'a plaintiff alleging unlawful retaliation need only establish that, as a direct result, he or she suffer[ed] any damages.'" *Eivins*, 636 S.W.3d at 180. Likewise, a plaintiff "must satisfy the causation standard by demonstrating that his complaint of discrimination was a 'motivating factor' in the [defendant's] adverse employment action by providing direct evidence of retaliation, or creating an inference of retaliation under the *McDonnel Douglas* burden-shifting framework." *Id.* (citing *Soto*, 502 S.W.3d at 48). Direct evidence of retaliation "includes evidence of 'remarks of the employer that reflect a discriminatory attitude,' as well as 'comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions.'" *Dowling v. Boeing Co.*, No. 4:21-CV-01414-SRC, 2023 WL 2645566, at *6 (E.D. Mo. Mar. 27, 2023) (citation omitted).

After searching the summary judgment record, we find the record is devoid of any direct evidence establishing Shiffman's claim of retaliation in violation of the MHRA. We therefore apply the *McDonnel Douglas* burden-shifting framework.

"To survive a motion for summary judgment on a retaliation claim, [a plaintiff] must offer direct evidence of retaliation or create an inference of retaliation under the *McDonnel Douglas* burden-shifting framework." *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017) (citation omitted). Under the *McDonnell Douglas* burden-shifting analysis, "the plaintiff bears the initial burden to establish a prima facie case" showing he "participated in protected conduct and suffered an adverse employment action." *Id.* at 740. "The plaintiff must also demonstrate a causal connection between the protected conduct and the adverse action." *Id.*

If the plaintiff establishes a prima facie case, "the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* "If the employer articulates a legitimate reason for the adverse employment action, the plaintiff may create a triable question as to retaliation by showing the employer's articulated reason was not the true reason for the adverse action." *Id.*

We find that Shiffman's material facts and supporting evidence are insufficient to create an inference of retaliation to meet his initial burden to establish a prima facie case.[15] Shiffman cannot demonstrate a causal connection between reporting alleged religious discrimination and his position's termination based on the summary judgment record before us. The record shows that Shiffman suffered an adverse employment action because his position was terminated in March 2020. In his response to the Royals' motion for summary judgment, Shiffman claims he

---

[15] Shiffman does not argue in his brief to his court that there was any relationship between his age and his retaliation claim, and thus waived appeal on this issue.

Further, in his amended petition, Shiffman also alleged retaliation in that the Royals told prospective "employers that [Shiffman] failed to perform his job duties and responsibilities." The summary judgment record, however, established that Shiffman only received a job offer from Madison Square Garden and that this potential employer withdrew its offer after conducting a background check and did not tell Shiffman why it withdrew the offer. Shiffman does not raise this issue on appeal and therefore it too is waived.

was terminated shortly after he complained to his supervisor that his coworker made a derogatory comment about Shiffman's Jewish religion in a marketing meeting. Shiffman's supervisor denied that Shiffman ever complained about his coworker's comment to him. Viewing the facts in the light most favorable to Shiffman, even if he did complain to his supervisor, the CRO and COO—not his supervisor—were responsible for the decision to terminate Shiffman's position.

As deemed admitted by Shiffman, his coworker was also not responsible for the decision to terminate his position nor did Shiffman's coworker have any supervisory role over Shiffman. Further, Shiffman's coworker was not consulted in any way about the decision to terminate Shiffman's position. Significantly, the CRO and COO—not Shiffman's supervisor or his coworker—made the decision to terminate his position in late February 2020, neither knew that Shiffman was Jewish, and neither were aware of any complaint regarding discrimination. The CRO and COO made the decision *before* the March marketing meeting and *before* Shiffman alleged he complained to his supervisor about his coworker's alleged derogatory comment about his religion. Thus, Shiffman cannot establish that his position was terminated because of his complaints of alleged religious discrimination to his supervisor, and Shiffman failed to prove his prima facie case of retaliation under the *McDonnell Douglas* test.

Point III is denied.

### Point IV: Shiffman's Hostile Work Environment Claim

In his fourth and final point on appeal, Shiffman argues the trial court erred in granting the Royals' motion for summary judgment on Shiffman's hostile work environment claim. Shiffman argues:

> [The Royals] did not meet its prima facie burden of showing its right to judgment as a matter of law in that the trial court incorrectly determined that a term,

31

condition, or privilege of the plaintiff's employment was not affected by the harassment by improperly relying on federal law and A) disregarding a tangible employment action that is legally sufficient to support a hostile work environment claim; and B) disregard[ing] the totality of the circumstances.

Before addressing Shiffman's fourth point on appeal on the merits, we again note that Point IV is multifarious in violation of Rule 84.04(d). Shiffman's fourth point on appeal improperly challenges two separate issues with the trial court's ruling, but we exercise our discretion and overlook this deficiency in his point on appeal because it does not impede our review of the merits. *See Lexow*, 643 S.W.3d at 508.

Continuing with the merits of Shiffman's appeal, Shiffman argues the trial court improperly relied on federal law when determining his hostile work environment claim. Shiffman contends the trial court should have applied the hostile work environment standard as set out in *Hill v. Ford Motor Co.*, 277 S.W.3d 659 (Mo. banc 2009). Shiffman quotes *Hill* for the idea that, "Both the claim for a hostile work environment and the claim for retaliation are governed by the MHRA, not by federal law." *Id.* at 662. Shiffman is incorrect.

*Hill*, in fact, states that appellate courts "are guided by both Missouri and federal law in deciding cases under the MHRA," albeit, at the time *Hill* was decided, "the protections of the MHRA [we]re not identical to those found in federal statutory schemes . . . ." *Id.* at 664. *Hill* cited *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007) to support the avoidance of federal caselaw specifically in the context of applying the *McDonnell Douglas* burden-shifting framework to MHRA claims. *Id.* at 664–65. *Hill*, like *Daugherty*, rejected applying the federal *McDonnell Douglas* burden-shifting analysis in MHRA cases. *Id.* at 665.

As stated prior, section 213.101.4, adopted by the Missouri legislature in 2017, specifically abrogated *Daugherty's exclusive application of Missouri law* as to the contributing

32

factor standard and, instead, embraced the federal motivating factor standard[16] as well as the

*McDonnell Douglas* burden-shifting framework, stating:

> The general assembly hereby expressly abrogates by this statute the cases of *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814 (Mo. 2007) and its progeny as they relate to the contributing factor standard and abandonment of the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Furthermore, as previously noted, the Missouri legislature explicitly directs that:

> If an employer in a case brought under this chapter files a motion pursuant to rule 74.04 of the Missouri rules of civil procedure, the court shall consider the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny to be highly persuasive for analysis in cases not involving direct evidence of discrimination.

§ 213.101.3. Since *Hill* relied on *Daugherty* to support the sole application of state law in such cases and *Daugherty* was abrogated on these grounds, we no longer apply *Hill*'s precedent exclusively applying state law when adjudicating such claims. The Eastern District of this Court further clarified, "In analyzing claims under the MHRA, we are guided by *both* Missouri law and applicable federal employment discrimination cases." *Bracely-Mosley*, 662 S.W.3d at 815 (emphasis added). Thus, the trial court properly relied on both Missouri and federal law in assessing Shiffman's hostile work environment claim.

> We now apply the proper standards for hostile work environment.

> A successful claim of a hostile work environment requires the plaintiff to show: (1) he is a member of a group protected under the MHRA; (2) he was subjected to unwelcome harassment; (3) the plaintiff's membership in the protected group was a motivating factor in the harassment; and (4) a term, condition, or privilege of the plaintiff's employment was affected by the harassment.

---

[16] Section 213.010(19) states, "'The motivating factor', the employee's protected classification actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action[.]"

33

*Eivins*, 636 S.W.3d at 179 (citing *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 748 (Mo. App. E.D. 2020)). "In a case of non-supervisory co-worker harassment, as here, a plaintiff must show an additional element to impose employer liability: that the employer knew or should have known of the conduct and failed to take proper remedial action." *M.W. by and through K.W. v. Six Flags St. Louis, LLC*, 605 S.W.3d 400, 409 (Mo. App. E.D. 2020). *See also Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 735 (8th Cir. 2018).

Here, Shiffman fails to meet the necessary fourth element and does not show by citing to specific admissible evidence how the alleged harassment affected a term, condition, or privilege of his employment. "The standard for proving this fourth element is demanding." *M.W. by & through K.W.*, 605 S.W.3d at 410. "The discriminatory harassment additionally affects a term, condition, or privilege of employment when it is 'sufficiently severe or pervasive enough to alter the conditions of the plaintiff's employment and create an abusive working environment.'" *Eivins*, 636 S.W.3d at 179 (quoting *McGaughy*, 604 S.W.3d at 748). "A [p]laintiff must only show that harassment affected a term, condition, or privilege of employment by *either* causing a tangible employment action *or* an abusive working environment." *Id.* (citing *McGaughy*, 604 S.W.3d at 748).

To affect a term, condition or privilege of employment, "[t]he harassing conduct must be 'so intimidating, offensive, or hostile that it poisoned the work environment and that the workplace was permeated with discriminatory intimidation, ridicule, and insult,' both viewed subjectively by the plaintiff and viewed objectively by a reasonable person." *M.W. by and through K.W*, 605 S.W.3d at 410 (internal citation omitted). *See McGaughy*, 604 S.W.3d at 748. "Further, in assessing the hostility of an environment, this Court has previously stated that we look to the totality of the circumstances." *McGaughy*, 604 S.W.3d at 748. *See Eivins*, 636

S.W.3d at 179 ("In assessing the hostility of an environment, we look to the totality of the circumstances.").

"Importantly, in most cases where a hostile working environment is established, the discriminatory acts are not of a nature that can be identified individually as significant events; instead the day-to-day harassment is primarily significant in its cumulative effect." *Bracely-Mosley*, 662 S.W.3d at 818 (citation omitted). *See also McGaughy*, 604 S.W.3d at 748. Generally, "[t]he unlawful employment practice 'occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'" *Miller-Weaver v. Dieomatic Inc.*, 657 S.W.3d 245, 253 (Mo. App. W.D. 2022) (citation omitted). A recurring theme of hostile work environment claims "is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Shirrell*, 24 F. Supp. 3d at 863 (citation omitted). For example, a "[m]ere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to support a claim of hostile work environment." *Id.* (quoting *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006)).[17]

Shiffman has not pointed to any direct or indirect evidence showing the alleged hostile work environment affected a term, condition, or privilege of his employment either by causing a tangible employment action or causing an abusive working environment.

---

[17] In fact, in federal hostile work environment cases, the United States Supreme Court "implores lower courts to apply the demanding harassment standards to 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

First, Shiffman cannot show the alleged hostile work environment caused a tangible employment action. "A tangible employment action is 'a significant change in employment status,' and 'the means by which the supervisor brings official power of the enterprise to bear on subordinates.'" *McGaughy*, 604 S.W.3d at 749 (citation omitted). A tangible employment action may include the firing of an employee. *M.W. by and through K.W.*, 605 S.W.3d at 411 (citing *Hill*, 277 S.W.3d at 666-67) (noting a tangible adverse employment action includes the "hiring and firing" of an employee).

As evidenced by the summary judgment record, the derogatory comment made by Shiffman's coworker about Jewish people collectively is not connected to the adverse employment action of Shiffman's position being eliminated. The CRO and COO already made the decision to eliminate Shiffman's position prior to the derogatory comment being made. Further, neither the CRO nor the COO knew Shiffman was Jewish. Shiffman's coworker was not responsible for the decision to terminate Shiffman's position, his coworker had no supervisory role over Shiffman, and his coworker was not consulted in any way about the decision to terminate Shiffman's position. Therefore, Shiffman cannot show his coworker's comment caused the tangible employment action—his firing.

Second, viewing the summary judgment record in the light most favorable to Shiffman, a fact-finder could not reasonably find that one coworker's derogatory comment about the Jewish religion at one meeting, even if true, was severe or pervasive enough to cause an abusive working environment as a matter of law.[18] Shiffman worked for the Royals for roughly ten years, from 2010 to 2020. During these ten years' employment, Shiffman cites only one incident

---

[18] Shiffman did not set forth and support any statements of material facts as to his age playing a part in any discriminatory statement or action, and Shiffman also failed to raise the issue that age was a motivating factor in his hostile work environment claim on appeal.

in which his coworker made a derogatory comment about his religion. Beyond his coworker's comment, the summary judgment record is otherwise bare of any other day-to-day harassment or discrimination producing the cumulative effect of a hostile work environment. Further, the coworker's comment, as contextualized by Shiffman himself in his statement of uncontroverted facts, was "referencing an issue with getting the Jewish community center's consent to use their logo on the Royals' website," and not directly targeting Shiffman because of his Jewish religion.

While the alleged derogatory comment Shiffman cited may have resulted in one uncomfortable meeting, Shiffman's coworker's conduct, under the law, was not so severe and pervasive that a reasonable person would objectively find Plaintiff's workplace "poisoned or hostile." *See Jamerison v. Anthem Ins. Companies, Inc.*, No. 4:20-CV-1640-MTS, 2022 WL 950861, at *8 (E.D. Mo. Mar. 30, 2022) (quoting *M.W. by and through K.W.*, 605 S.W.3d at 413). As demonstrated by the summary judgment record, Shiffman's work environment was not "permeated with discriminatory abuse" by one or two alleged derogatory comments made by one coworker at one marketing meeting to the extent of being "grave or acute, or ubiquitous or rampant." *See Bracely-Mosley*, 662 S.W.3d at 820. Thus, looking at the totality of the circumstances, Shiffman failed to make a prima facie case establishing his hostile work environment claim. We agree with the trial court that the summary judgment record fails to provide any other specific evidence creating a genuine issue of material fact as to this claim, therefore, the Royals were entitled to judgment as a matter of law.

Point IV is denied.

**Conclusion**

The trial court's judgment is affirmed.

_____
Janet Sutton, Judge

Anthony Rex Gabbert, P.J., and Karen King Mitchell, J. concur.